Filed 11/25/15  Flowers v. Los Angeles County Metro. Transp. Authority CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NATHAN FLOWERS<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>        Defendant and Respondent. | B256744<br><br>(Los Angeles County Super. Ct. No. BC515136) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Elihu M. Berle, Judge.  Affirmed in part and reversed in part.

The Tidrick Law Firm, Steven G. Tidrick and Joel B. Young for Plaintiff and Appellant.

Jones Day, Erica L. Reilley, Cindi Ritchey, and Charlotte Wasserstein; Mark J. Saladino, County Counsel, Charles M. Safer, Assistant County Counsel, and Ronald W. Stamm, Deputy County Counsel for Defendant and Respondent.

This appeal concerns overlapping provisions of the Labor Code, the Public Utilities Code (PUC), and an Industrial Welfare Commission (IWC) wage order governing the wages, hours, and working conditions of transit operators employed by the Los Angeles Metropolitan Transportation Authority (MTA). The issues presented are (1) whether PUC sections 30257 and 30750 exempt the MTA from minimum wage and rest period requirements imposed by the Labor Code and by IWC Order No. 9-2001 (Cal. Code Regs., tit. 8, § 11090) (wage order 9), and (2) if the MTA is subject to the provisions of wage order 9, whether the terms of the wage order itself exempt MTA transit operators from the rest period requirements.

We hold that PUC sections 30257 and 30750 do not exempt the MTA from rest period and minimum wage requirements, but that the rest period requirements do not apply to the MTA operators who are the putative plaintiffs in this action.

## BACKGROUND

The MTA is a public entity created pursuant to the County Transportation Commissions Act. (Pub. Util. Code, §§ 130000, 130050.2.) Among other services, the MTA operates a public transportation system, including bus and rail transit systems.

Plaintiff Nathan Flowers (plaintiff) is a former MTA employee who worked as a bus driver. Plaintiff's employment with the MTA was governed by a collective bargaining agreement (CBA).

After plaintiff's employment with the MTA ended, he filed a class action complaint against the MTA on behalf of a putative class of current and former bus and train operators employed by the MTA since July 15, 2010. The operative amended complaint alleges four causes of action: (1) failure to pay minimum wage and overtime compensation in violation of the federal Fair Labor Standards Act (29 U.S.C. § 201) (FLSA); (2) failure to pay minimum wage in violation of Labor Code section 1194 and wage order 9; (3) civil penalties pursuant to the California Labor Code Private Attorney General Act (PAGA); and (4) failure to provide rest periods or to pay premiums for missed rest periods under Labor Code section 226.7 and wage order 9.

2

The MTA demurred to all causes of action and filed a petition to compel arbitration of certain of the claims.  The trial court sustained the demurrer, without leave to amend, as to the second cause of action for violation of state minimum wage requirements, the third cause of action for violation of PAGA, and the fourth cause of action for violation of rest period requirements.  The court overruled the demurrer with respect to the FLSA claim and denied the petition to compel arbitration.

Plaintiff voluntarily dismissed the FLSA claim without prejudice, and a judgment of dismissal was entered in favor of the MTA.  This appeal followed.

## THE PARTIES' CONTENTIONS

Plaintiff contends his amended complaint states a claim for violation of minimum wage and rest period requirements imposed by the Labor Code and wage order 9 and for civil penalties under PAGA.  The MTA argues that two provisions of the Southern California Rapid Transit District Law[1] -- PUC sections 30257 and 30750 -- immunize it from the wage and rest period requirements, and that plaintiff's derivative PAGA claim fails for the same reason.

## DISCUSSION

### I.  General legal principles and standard of review

The parties' contentions raise issues concerning interpretation of the Labor Code, the PUC, and wage order 9.  The ordinary principles of statutory interpretation apply. (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 43 [wage orders are construed in accordance with the principles of statutory interpretation].)  Under those principles, our analysis begins by ascertaining the legislative intent underlying the statute "so that we may adopt the construction that best effectuates the purpose of the law. [Citation.]" (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.)  To do so, we first examine the words of the statute as the best indication of legislative intent.

---

[1]     The Southern California Rapid Transit District Law governs the MTA as the successor agency to the Southern California Rapid Transit District and sets forth the powers and functions of the MTA.  (See Pub. Util. Code, §§ 30001, 30500-30756.)

3

(*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).) Those words are given their ordinary and usual meaning and are construed in their statutory context. (*Hassan, supra*, at p. 715.) Judicial construction that renders any part of the statute meaningless or inoperative should be avoided. (*Ibid.*)

If the language of the statute is clear, it is applied without further inquiry. (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 568.) If the language can be interpreted to have more than one reasonable meaning, a court may consider "'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" (*Id.* at pp. 568-569.)

An appellate court reviews a trial court's sustaining of a demurrer de novo, exercising its independent judgment as to whether a cause of action has been stated as a matter of law. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.) "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

## II.  Legal framework

### A.  *Labor Code provisions*

#### 1.  Labor Code section 1194 minimum wage requirements

Labor Code section 1194 accords an employee a statutory right to recover unpaid wages from an employer who fails to pay the minimum wage. (*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 778.)

4

The statute provides in relevant part:  "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  (Lab. Code, § 1194, subd. (a).)

Labor Code section 1194 does not define the employment relationship nor does it specify who may be liable for unpaid wages.  Specific employers and employees become subject to the minimum wage requirements only through and under the terms of wage orders promulgated by the IWC, the agency formerly authorized to regulate working conditions in California.[2]  (*Martinez v. Combs* (2010) 49 Cal.4th 35, 54-55.)  Accordingly, "an employee who sues to recover unpaid minimum wages actually and necessarily sues to enforce the wage order."  (*Id.* at pp. 56-57.)

### 2.  Labor Code section 226.7 rest period requirements and exemption

Labor Code section 226.7 prohibits an employer from requiring an employee to work during a rest period that is required by an applicable statute, regulation, or IWC wage order, unless the employer pays the employee one additional hour of regular pay for each workday on which a rest period is missed.  (Lab. Code, § 226.7, subds. (b), (c).)[3]

---

[2]     Although the IWC was defunded in 2004, its wage orders remain in effect. (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 145, fn. 1.)

[3]     Labor Code section 226.7, subdivisions (b) and (c) state:  "(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.  [¶]  (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

Section 226.7, subdivision (e) states that the rest period requirements do not apply, however, "to an employee who is exempt from meal or rest or recovery period requirements pursuant to other state laws, including, but not limited to, a statute or regulation, standard, or order of the Industrial Welfare Commission." (Lab. Code, § 226.7, subd. (e).)

### 3. Labor Code section 512.5 rest period exemption

Labor Code section 512.5 authorizes the IWC to exempt from rest period requirements public transit operators who are covered by a collective bargaining agreement. Subdivision (a) of section 512.5 provides in relevant part: "[I]f the Industrial Welfare Commission adopts or amends an order that applies to an employee of a public agency who operates a commercial motor vehicle, it may exempt that employee from the application of the provisions of that order which relate to meal periods or rest periods, consistent with the health and welfare of that employee, if he or she is covered by a valid collective bargaining agreement." (Lab. Code, § 512.5, subd. (a).)

### B. Wage order 9

"Nearly a century ago, the Legislature responded to the problem of inadequate wages and poor working conditions by establishing the IWC and delegating to it the authority to investigate various industries and promulgate wage orders fixing for each industry minimum wages, maximum hours of work, and conditions of labor. [Citations.] Pursuant to its 'broad statutory authority' [citation], the IWC in 1916 began issuing industry- and occupation-wide wage orders specifying minimum requirements with respect to wages, hours, and working conditions [citation]." (*Brinker, supra*, 53 Cal.4th at p. 1026.)

The wage order applicable in this case, wage order 9, effective July 1, 2004, as amended, governs employers and employees in the transportation industry.  Section 4 of wage order 9 imposes minimum wage requirements[4] and section 12 imposes rest period requirements.[5]

---

[4]    Section 4 of wage order 9, effective July 1, 2004, provides as follows:
"**4.  MINIMUM WAGES**
"(A)  Every employer shall pay to each employee wages not less than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008, except:
"LEARNERS:  Employees during their first 160 hours of employment in occupations in which they have no previous similar or related experience, may be paid not less than 85 percent of the minimum wage rounded to the nearest nickel.
"(B)  Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.
"(C)  When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.
"(D)  The provisions of this section shall not apply to apprentices regularly indentured under the State Division of Apprenticeship Standards."

[5]    Section 12 of wage order 9 states:
"**12.  REST PERIODS**
"(A)  Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major faction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours.  Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
"(B)  If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.
"(C)  This section shall not apply to any public transit bus driver covered by a valid collective bargaining agreement if the agreement expressly provides for rest periods for those employees, final and binding arbitration of disputes concerning application of

7

Prior to January 1, 2001, wage order 9 did not apply to public employees. A 2001 amendment changed this by making certain enumerated sections of the wage order applicable to government employees. Among the enumerated sections now applicable to public employees is section 4, the minimum wage provision. A further amendment in 2004 made meal period and rest period requirements in sections 11 and 12 of the wage order applicable to public transit drivers, except for those covered by a collective bargaining agreement containing certain specified terms. The 2001 and 2004 amendments revised sections 1(B) and 12(C) of wage order 9.

Section 1(B) states in relevant part:

"**1. APPLICABILITY OF ORDER**

"This order shall apply to all persons employed in the transportation industry whether paid on a time, piece rate, commission, or other basis, except that:

"[¶] . . . [¶]

"(B) Except as provided in Sections 1, 2, 4, 10, and 20, and with regard to commercial drivers, Sections 11, and 12, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district. The applications of Sections 11 and 12 for commercial drivers employed by governmental entities shall become effective July 1, 2004 or following the expiration date of any valid collective bargaining agreement applicable to such commercial drivers then in effect but, in any event, no later than August 1, 2005. Notwithstanding Section 21, the application of Sections 11 and 12 to public transit bus drivers shall be null and void in the event the IWC or any court of competent jurisdiction invalidates the collective bargaining exemption established by Sections 11 or 12 for those drivers."

Section 12(C) of wage order 9 states:

"This section [governing rest periods] shall not apply to any public transit bus driver covered by a valid collective bargaining agreement if the

---

its rest period provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the State minimum wage rate."

agreement expressly provides for rest periods for those employees, final and binding arbitration of disputes concerning application of its rest period provisions, premium wage rates for overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the State minimum wage rate."

### C. PUC sections 30257 and 30750

Besides delegating to the IWC the authority to regulate wages, hours, and working conditions of transit workers, the Legislature has delegated to the MTA, in PUC section 30257, the authority to "adopt a personnel system for the purpose of recruiting and maintaining an effective working force with good morale," to create job positions, and to establish salaries and benefits for those positions. (Pub. Util. Code, § 30257.) The MTA's authority to do so is circumscribed, however, by the collective bargaining rights of its employees. PUC section 30257 states that the MTA may "determine and create such number and character of positions as are necessary properly to carry on the functions of the district" and "establish an appropriate salary, salary range, or wage for each position so created, *except for positions in a bargaining unit represented by a labor organization*." (Pub. Util. Code, § 30257, italics added.)

The Legislature has accorded MTA employees extensive collective bargaining rights. PUC section 30750, subdivision (a) provides that if a majority of employees indicates a desire to be represented by a labor organization, the MTA and the representative organization must "bargain in good faith and make all reasonable efforts to reach agreement on the terms of a written contract governing wages, hours, and working conditions." (Pub. Util. Code, § 30257, subd. (a).) Subdivision (c) of PUC section 30750 states that the MTA's duty to bargain in good faith, and to enter into and comply with the terms of a collective bargaining agreement, shall not be restricted by other laws: "The obligation of the [MTA] to bargain in good faith with a duly designated or certified labor organization and to execute a written collective bargaining agreement with that labor organization covering the wages, hours, and working conditions of the employees . . . and

9

to comply with the terms of that collective bargaining agreement, shall not be limited or restricted by any other provision of law." (Pub. Util. Code, § 30750, subd. (c).)[6]

## III. Minimum wage requirements

### A. *The minimum wage requirements of wage order 9 apply to the MTA*

The plain language of wage order 9 imposes minimum wage requirements on the MTA. Section 1 of the wage order states that its provisions "shall apply to all persons employed in the transportation industry." Section 1(B) of wage order 9 makes employees of "the State or any political subdivision thereof, including any city, county or special district" expressly subject to the minimum wage requirements set forth in section 4. Section 4 of the wage order requires "[e]very employer" to pay a specified minimum wage to its employees. Wage order 9 contains no exception from the minimum wage requirements for public entity employers such as the MTA. The minimum wage requirements accordingly apply to the MTA and its employees, unless another statutory exemption applies.

### B. *PUC sections 30257 and 30750 do not exempt the MTA from minimum wage and rest period requirements*

The MTA contends that PUC sections 30257 and 30750 exempt it from the minimum wage and rest period requirements imposed by the Labor Code and by wage

---

**6** Subdivision (c) of PUC section 30750 in its entirety states: "The obligation of the district to bargain in good faith with a duly designated or certified labor organization and to execute a written collective bargaining agreement with that labor organization covering the wages, hours, and working conditions of the employees represented by that labor organization in an appropriate unit, and to comply with the terms of that collective bargaining agreement, shall not be limited or restricted by any other provision of law. The obligation of the district to bargain collectively shall extend to all subjects of collective bargaining, including, but not limited to, retroactive pay increases. Notwithstanding any other provision of law, the district shall make deductions from the wages and salaries of its employees, upon receipt of authorization to make those deductions, for the payment of union dues, fees, or assessments, for the payment of contributions pursuant to any health and welfare plan or pension plan, or for any other purpose for which deductions may be authorized by employees where the deductions are pursuant to a collective bargaining agreement with a duly designated or certified labor organization."

order 9. The MTA argues that those statutes accord it and a duly designated labor organization the sole and exclusive authority to determine the wages and working conditions of MTA employees through the collective bargaining process and preclude challenges to this authority based on "any other provision of law."

### 1. The plain language of the statutes provides no exemption

The plain language of PUC section 30257 does not support the MTA's position. Section 30257 simply states that the MTA "shall establish an appropriate salary, salary range, or wage" for positions it creates "except for positions in a bargaining unit represented by a labor organization." (Pub. Util. Code, § 30257.) The statute does not exempt the MTA from state minimum wage requirements, nor does it accord the MTA sole and exclusive authority or discretion to determine what constitutes an "appropriate" wage for positions established by its board. Rather, it circumscribes the MTA's authority by precluding it from establishing salaries or wages for "positions in a bargaining unit represented by a labor organization."

PUC section 30750 also contains no exception from state minimum wage requirements. The plain language of that statute states that the MTA's *obligation* to bargain in good faith with a duly designated labor organization, to execute a collective bargaining agreement, and to comply with the terms of such an agreement shall not be limited or restricted by any other provision of law. The MTA fails to explain how complying with the state minimum wage law would limit or restrict its obligation to perform any of the tasks specified in PUC section 30750, subdivision (c).

The MTA argues, without explanation, that complying with state minimum wage requirements would restrict its ability to execute a collective bargaining agreement covering the wages, hours, and working conditions of its employees and to comply with the terms of such an agreement. That argument is presumably based on the assumption that a collective bargaining agreement could provide for employee compensation at a rate less than the applicable minimum wage. But Labor Code section 1194 prohibits such an agreement by according employees the right to recover the unpaid balance of the

11

applicable legal minimum wage "[n]otwithstanding any agreement to work for a lesser wage." (Lab. Code, § 1194.)

The absence of an express exemption from the applicable minimum wage requirements in the PUC sections on which the MTA relies may be contrasted with express exemptions accorded to public employees in other statutes. Labor Code section 512.5, subdivision (a) creates such an exemption for public transit operators: "Notwithstanding any provision of this chapter, if the Industrial Welfare Commission adopts or amends an order that applies to an employee of a public agency who operates a commercial motor vehicle, it may exempt that employee from the application of the provisions of that order which relate to meal periods or rest periods, consistent with the health and welfare of that employee, if he or she is covered by a valid collective bargaining agreement." The Legislature has demonstrated that it knows how to create an exemption from the provisions of an IWC wage order when it intends to do so. There is no exemption from the minimum wage provisions of wage order 9 in PUC section 30750, subdivision (c), and the MTA has presented no valid basis for inferring such an exemption. (See, e.g., *Plastic Pipe & Fittings Assn. v. California Building Standards Com.* (2004) 124 Cal.App.4th 1390, 1413 [absent an express statutory exemption, court cannot infer exemption from statutory requirements unless it discerns a clear legislative intent to provide an exemption].)

### 2. *Grier v. Alameda-Contra Costa Transit Dist.* does not compel a different result

The MTA cites *Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325 (*Grier*) as support for its argument that PUC section 30750 evidences the Legislature's intent that labor relations between the MTA and its employees be governed exclusively by the PUC, thereby exempting the MTA from minimum wage and rest period requirements imposed by the Labor Code and wage order 9.

The plaintiffs in *Grier* were bus drivers employed by the Alameda-Contra Costa Transit District (Alameda District) who sued the Alameda District for violating Labor Code section 2928, which limits an employer's ability to deduct wages as a penalty for

12

employee tardiness. (*Grier, supra*, 55 Cal.App.3d at p. 328.) The plaintiffs' employment was governed by a collective bargaining agreement that contained provisions governing tardiness for work. (*Id.* at p. 329.)

The Alameda District argued that it was exempt from Labor Code section 2928 because its labor relations were governed exclusively by the PUC and by applicable rules and regulations adopted by its board. (*Grier, supra*, 55 Cal.App.3d at p. 331.) The court in *Grier* rejected that argument, noting that "[t]he most salient point" against the Alameda District's position was the fact that the PUC section applicable to the Alameda District did not contain exclusionary language similar to that contained in section 30750, subdivision (c). That statute as then in effect stated that "'[t]he obligation of the district to bargain in good faith with a duly designated or certified labor organization and to execute a written collective bargaining agreement with such labor organization covering the wages, hours, and working conditions of the employees represented by such labor organization in an appropriate unit, and to comply with the terms thereof *shall not be limited or restricted by the provisions of the Government Code or other laws or statutes. . . .*'"[7] (*Id.* at p. 332.) Noting that "[t]he Legislature plainly thought it necessary to include the express language negating other statutory restrictions" in the provisions governing the Southern California transit districts, the court in *Grier* determined that the absence of such express language in the provisions governing the Alameda District "indicates that a different meaning was intended." (*Ibid.*) The court then concluded: "[I]t does not appear that the Legislature intended Alameda-Contra Costa County Transit District labor relations to be governed *only* by the Public Utility Code provisions relating thereto. Rather, the rules and regulations adopted by the board of directors . . . including those adopted by a resolution approving a collective bargaining agreement, must

---

[7]    Subdivision (c) of PUC section 30750 was amended in 2004 to state that the district's obligation to bargain in good faith with a duly designated or certified labor organization, to execute a written collective bargaining agreement, and to comply with the terms of the collective bargaining agreement "shall not be limited or restricted by any other provision of law." (Stats. 2004, ch. 788, § 20.)

13

themselves be promulgated *subject to* the limitations and restrictions of other applicable laws." (*Id.* at p. 333.)

We note at the outset that *Grier* concerned the interpretation of the PUC provisions applicable to the Alameda-Contra Costa County Transit District, and not section 30750. The court in *Grier* considered PUC section 30750, subdivision (c) only in comparison to the Alameda Transit District statutes at issue in that case. We disagree with any suggestion by the court in *Grier* that PUC section 30750, subdivision (c), evidences an intent by the Legislature that labor relations between the MTA and its employees be governed exclusively by the PUC, or that the MTA and its employees are not subject to state minimum wage requirements.

**3. Statutory interpretation principles and public policy support application of the minimum wage**

The MTA's interpretation of PUC section 30750, subdivision (c) is not only unsupported by the plain language of that statute, it conflicts with the express terms of wage order 9, which, subject to exceptions not applicable here, applies to "all persons employed in the transportation industry," including "employees directly employed by the State or any political subdivision thereof, including any city, county, or special district" and "commercial drivers employed by governmental entities." Under the applicable principles of statutory interpretation, potentially conflicting statutory provisions should be interpreted to harmonize and reconcile their respective elements so as to carry out the overriding legislative purpose of the statutory scheme as a whole. (*Russell v. Stanford University Hospital* (1997) 15 Cal.4th 783, 789.) Applying this principle here, it is possible for the MTA to comply with the minimum wage law and to meet its obligations to bargain in good faith with a duly designated labor organization and to execute a collective bargaining agreement and comply with its terms.

Our interpretation of the relevant statutory provisions is consistent with federal and California labor law, and with the public policy underpinnings of those laws. Under both federal and California law, employees may not agree to waive their entitlement to the minimum wage (Lab. Code, §§ 1194, 219; *Barrentine v. Arkansas-Best Freight Sys.*

14

(1981) 450 U.S. 728, 740-741), nor may a collective bargaining agreement waive that right. (*Gordon v. City of Oakland* (9th Cir. 2010) 627 F.3d 1092, 1095.) "State wage and hour laws 'reflect the strong public policy favoring protection of workers' general welfare and "society's interest in a stable job market." [Citations.]' [Citations.]" (*Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1297.) They are therefore liberally construed in favor of protecting workers. Our Supreme Court has stated that, "'[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' [Citations.]" (*Brinker, supra*, 53 Cal.4th at pp. 1026-1027.) Both the statutory framework and its underlying public policy support application of the minimum wage in this case.

PUC sections 30257 and 30750, subdivision (c) do not exempt the MTA as a matter of law from minimum wage requirements imposed by the Labor Code and wage order 9. The trial court erred by sustaining the demurrer to plaintiff's second cause of action for violation of the state minimum wage law on that basis.

## IV. Rest period requirements

### A. *Rest period exemption under section 12(C) of wage order 9*

Section 12(C) of wage order 9 states that rest period requirements do not apply to public transit bus drivers covered by a valid collective bargaining agreement if the agreement provides for (1) rest periods for those employees, (2) final and binding arbitration of disputes concerning application of its rest period provisions, (3) "premium wage rates for all overtime hours worked," and (4) "regular hourly rate of pay of not less than 30 percent more than the State minimum wage."

Plaintiff concedes that the MTA and its employees have entered into a valid collective bargaining agreement that satisfies all but the third required element for the rest break exemption accorded by section 12(C) of wage order 9 -- premium wage rates for all overtime hours worked. Plaintiff contends that the rest period exemption does not apply because the collective bargaining agreement does not provide premium wage rates

15

for "all overtime hours worked" by MTA bus and train operators. Whether the exemption accorded by section 12(C) of wage order 9 applies requires an examination of overtime compensation requirements in the collective bargaining agreement and under applicable law.

**B. *Overtime compensation under federal and California law***

Both federal and California law govern the payment of overtime compensation. (See 29 U.S.C. § 207; Lab. Code, § 510 et seq.) The FLSA requires overtime pay only if an employee works more than 40 hours per week, regardless of the number of hours worked during any one day. (29 U.S.C. § 207(a)(1).) California law, codified at Labor Code section 510, is more stringent and requires overtime compensation for "[a]ny work in excess of eight hours in one workday *and* any work in excess of 40 hours in any one workweek." (Lab. Code, § 510, subd. (a), italics added.)

Labor Code section 514 exempts from the overtime pay requirements of section 510 any employee covered by a valid collective bargaining agreement that provides "premium wage rates for all overtime hours worked" and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage. (Lab. Code, § 514.)[8]

**C. *Overtime provisions in the collective bargaining agreement***

The MTA's collective bargaining agreement defines overtime as work performed by operators "in excess of eight (8) hours per day, except as provided elsewhere in this Contract." The collective bargaining agreement further states that "[a]ll hours worked in excess of forty (40) hours in a work week shall be subject to the provisions of the Fair Labor Standards Act (FLSA)."

The collective bargaining agreement excepts from the definition of overtime certain tasks that are compensated at a regular pay rate, even if performance of those tasks causes an operator's hours to exceed eight hours in one day or 40 hours in one

---

[8]     The conditions for the overtime exemption accorded by Labor Code section 514 are identical to two of the required elements for the rest period exemption accorded by section 12(C) of wage order 9.

week. These tasks include "making out accident reports," "making a required miscellaneous report," "completing a required Operators' Daily Log," "tak[ing] physical re-examinations on off days or off hours," and attending "Verification of Transit Training."

Plaintiff contends the foregoing tasks constitute compensable work time under wage order 9, which defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so," and must be compensated at the premium wage rate if their performance causes an operator's hours worked to exceed eight hours in one day or 40 hours in one week. Plaintiff further contends that because the collective bargaining agreement fails to do so, it does not meet the requirements for the rest period exemption accorded by section 12(C) of wage order 9.

The MTA argues that the parties may contractually agree, through the collective bargaining process, to exclude the specified tasks from the definition of "overtime hours worked." The MTA maintains that the definition set forth in the collective bargaining agreement, and not the statutory definition, should be applied in the instant case.

We previously considered this issue in *Vranish v. Exxon Mobil Corp.* (2014) 223 Cal.App.4th 103 (*Vranish*).

### D. Vranish

The plaintiffs in *Vranish* were employees whose employment was governed by a valid collective bargaining agreement. Consistent with the terms of that agreement, the plaintiffs worked a regularly scheduled workweek that required them to work more than eight hours in a 24-hour period. The collective bargaining agreement provided for overtime pay for hours worked in excess of 40 hours in a workweek or 12 hours in a workday, and plaintiffs were compensated for all overtime worked in accordance with the terms of the agreement. The plaintiffs sued the employer, arguing that their collective bargaining agreement did not satisfy the Labor Code section 514 requirement of providing premium wages for all overtime hours worked because they were not paid overtime compensation until they worked more than 12 hours in a single workday rather

17

than the eight hours prescribed by Labor Code section 510. (*Vranish, supra*, 223 Cal.App.4th at pp. 106-107.)

We concluded that the plain language of Labor Code section 514 did not support the plaintiffs' argument that the phrase "all overtime hours worked" as used in that statute necessarily incorporated the definition of overtime in Labor Code section 510, subdivision (a), i.e., "[a]ny work in excess of eight hours in workday and any work in excess of 40 hours in any one workweek," and that section 514 only required the employer to pay a premium wage for overtime worked as defined in the parties' collective bargaining agreement. (*Vranish, supra*, 223 Cal.App.4th at p. 110.) We found support for that conclusion in the legislative history of Labor Code section 514, in an opinion from the Department of Industrial Relations, Division of Labor Standards Enforcement, and in the public policy underlying the statute. (*Id.* at pp. 110-112.)

*Vranish* is controlling authority with regard to the issue presented here. The MTA is only required to pay a premium for overtime worked as defined in the parties' collective bargaining agreement. Plaintiff does not dispute that the collective bargaining agreement provides for premium wages for "all overtime hours worked," as that term is defined in the collective bargaining agreement. The exemption accorded by Labor Code section 514 accordingly applies, as does the exemption set forth in section 12(C) of wage order 9. The rest period requirements set forth in section 12 of wage order 9 do not apply to plaintiff and the MTA employees he purportedly represents. The trial court did not err by sustaining the demurrer to plaintiff's fourth cause of action for violation of the rest period requirements.

## V. PAGA claim

"Under the Labor Code, the Labor and Workforce Development Agency (LWDA) and its constituent departments and divisions are authorized to collect civil penalties for specified labor law violations by employers. [Citation.] To enhance the enforcement of the labor laws, the Legislature enacted [the Labor Code Private Attorneys General Act (Lab. Code, § 2698 et seq.)] PAGA in 2003." (*Home Depot U.S.A., Inc. v. Superior Court* (2010) 191 Cal.App.4th 210, 216.) Section 2699, subdivision (a) of PAGA

18

"permits aggrieved employees to recover civil penalties that previously could be collected only by LWDA. [Citation.] In addition, to address violations for which no such penalty had been established, subdivision (f) of the statute created 'a default penalty and a private right of action' for aggrieved employees." (*Ibid.*)

Although PAGA does not create a private right of action to directly enforce a wage order promulgated by the IWC, a PAGA action "can serve to *indirectly* enforce certain wage order provisions by enforcing *statutes* that require compliance with wage orders." (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1132.) The minimum wage requirements of Labor Code section 1194 is one of those statutes. (Lab. Code, §§ 2699.3, subd. (a), 2699.5.)

The MTA's sole basis for demurring to plaintiff's PAGA cause of action was that plaintiff's claims under the Labor Code are precluded, as a matter of law, by PUC sections 30257 and 30750. As discussed, those PUC sections do not bar plaintiff's statutory minimum wage claim. We accordingly reverse the order sustaining the demurrer to plaintiff's PAGA claim for the same reason we reverse the order sustaining the demurrer to plaintiff's state minimum wage claim.

## DISPOSITION

The order sustaining the demurrer to the second cause of action for violation of the minimum wage requirements under Labor Code section 1194 and wage order 9 and to the third cause of action for civil penalties under PAGA for violation of the minimum wage requirements is reversed. The judgment is otherwise affirmed. The parties will bear their respective costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.     _____, J.
ASHMANN-GERST                                HOFFSTADT

19