Filed 8/29/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PATRICK KRUG, | B320588 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV14538) |
| v. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, | |
| Defendant and Respondent. | |

---

APPEAL from a judgment of the Superior Court of Los Angeles County, Carolyn B. Kuhl, Judge. Affirmed.

Stiller Law Firm, Ari. J. Stiller; Hennig Kramer Ruiz & Singh, Jennifer Kramer, Shoshee Jau Hui; Gunn Coble, Beth Gunn, Catherine J. Coble for Plaintiff and Appellant.

Call & Jensen, Julie R. Trotter, Jacqueline Beaumont, Melinda Evans for Defendant and Respondent.

_____

When the Covid pandemic struck, the California State University (CSU) directed that instruction be provided remotely. To provide such instruction, Patrick Krug, a biology professor at CSU-Los Angeles, incurred expenses which CSU refused to reimburse for a computer and other equipment. Krug sued CSU's board of trustees on behalf of himself and similarly situated faculty, alleging Labor Code section 2802 obligated CSU to reimburse employees for necessary work-related expenses. CSU demurred, arguing that as a department of the state it enjoys broad exemption from Labor Code provisions that infringe on its sovereign powers. Krug appeals from a judgment of dismissal entered after the trial court sustained CSU's demurrer without leave to amend.

We affirm. Absent express words or positive indicia to the contrary, a governmental agency is not within the general words of a statute. Although this exemption is limited to cases where application of the statute would impair the entity's sovereignty, subjecting CSU to Labor Code section 2802 in this case would do so because it would infringe on the broad discretion CSU enjoys under the Education Code to set its own equipment reimbursement policies.

## BACKGROUND

As this case comes to us after dismissal upon demurrer, we take the alleged facts to be true, all of which are undisputed in any event.

In March 2020, CSU ordered its teachers to begin teaching classes remotely. Krug did so but was denied access to his workplace office to retrieve his CSU-provided computer and printer. He absorbed the cost for replacing these items himself, then asked for reimbursement, which the school denied. CSU

took the position that Labor Code section 2802, subdivision (a), which obligates an employer to "indemnify [an] employee for all necessary expenditures . . . incurred . . . in direct consequence of the discharge of his or her duties," did not apply to the school because such application would infringe on its sovereign powers as a department of the state.[1]

Krug asked the Department of Industrial Relations (DLSE) whether the school's non-reimbursement policy was lawful. The DLSE responded that it disagreed with CSU's interpretation of section 2802.

Krug filed this class action complaint, alleging a single claim for reimbursement of home-office expenses for himself and other CSU faculty employees under section 2802. He later amended to add a claim under the Private Attorneys General Act (PAGA) stemming from the same reimbursement violation. He alleged he incurred necessary business expenses for electricity, postage, internet service charges, use of personal phones for work-related purposes, office supplies, chairs, computers, printers, ink and toner, and computer monitors required to perform his work.

CSU demurred to the Labor Code claim on the ground that as a department of the state it was not subject to section 2802, and to the PAGA claim on the ground that an employee may seek PAGA penalties against a public entity only if the underlying statute provides for civil penalties, which section 2802 did not.

The trial court reasoned that a governmental agency is generally exempt from Labor Code statutes that do not expressly

---

[1] Undesignated statutory references will be to the Labor Code.

state they apply to public employers.  The court therefore sustained CSU's demurrer without leave to amend and entered judgment accordingly.

Krug appeals from the judgment of dismissal.

## DISCUSSION

Krug contends that section 2802 applies to CSU.  We disagree.

## A.    Applicable Legal Principles

### 1.    Standard of Review

We review an order sustaining a demurrer de novo, and a denial of leave to amend for abuse of discretion.  (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152.)

"When construing the Labor Code and wage orders, [courts] adopt the construction that best gives effect to the purpose of the Legislature and the [Industrial Welfare Commission]." (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 839.)  That purpose is "the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code." (*Ibid.*)

### 2.    Section 2802

Subdivision (a) of section 2802 provides:  "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

4

### 3. Statutory Construction: Sovereign Powers Doctrine

" 'We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose. [Citation.] "[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." ' " (*McLean v. State of California* (2016) 1 Cal.5th 615, 622.)

"A traditional rule of statutory construction is that, absent express words to the contrary, governmental agencies are not included within the general words of a statute." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1192 (*Wells*).)

Thus, the Labor Code applies only to private sector employees unless a Labor Code provision is "specifically made applicable to public employees." (*Campbell v. Regents of Univ. of California* (2005) 35 Cal.4th 311, 330; *California Correctional Peace Officers' Association v. State of California* (2010) 188 Cal.App.4th 646, 652-653; *Nutter v. City of Santa Monica* (1946) 74 Cal.App.2d 292, 301.)

Specifically in the context of reimbursement for work expenses (uniform costs), section 2802 does not apply to counties, cities, or the state. (*In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 332, 339, 345.)

But this maxim of construction " 'excludes governmental agencies from the operation of general statutory provisions only if their inclusion would result in an infringement upon sovereign

governmental powers.  "Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only." [Citation.]' " (*Regents of University of Cal. v. Superior Court of Alameda County* (1976) 17 Cal.3d 533, 536 (*Regents*); cf. *Nutter v. City of Santa Monica*, *supra*, 74 Cal.App.2d at p. 300 ["It is well established that general terms of a statute will not be construed as including government if the statute would operate to trench upon sovereign rights"].)  For example, a state university's sovereign powers based on its educational functions does not extend to the university's investment activities so as to exclude it from anti-usury laws.  (*Regents*, at p. 537.)

Furthermore, although the "sovereign powers" principle can help resolve an unclear legislative intent, it cannot override positive indicia of a contrary legislative intent.  (*Wells*, *supra*, 39 Cal.4th at p. 1193.)  For example, the legislative history of the California False Claims Act deleted any reference to public entities as covered "persons."  (*Id*. at pp. 1189-1192.)  That the Legislature thus deliberately excluded public entities from the definition of "persons" evidenced its intent not to apply the terms of a statute to a public entity without specific reference.  (*Id*. at p. 1193.)

We thus apply a three-part test to whether the sovereign powers canon overcomes a generally applicable Labor Code provision.  First, we look for "express words" referring to governmental agencies.  (*Wells*, *supra*, 39 Cal.4th at p. 1192.)  If there are none, we look for "positive indicia" of a legislative intent to exempt such agencies from the statute.  (*Id*. at p. 1193.)  If no

6

such indicia appear, we ask whether applying the statute "would result in an infringement upon sovereign governmental powers." (*Id*. at p. 1192.)

### 4. CSU's Sovereign Powers

CSU is a state agency with the sovereign power to produce public university-level education. (*Sargent v. Bd. of Trustees of California State Univ.* (2021) 61 Cal.App.5th 658, 672; Ed. Code, §§ 66600 [creating CSU's board of trustees]; 89000 et seq. [governing CSU].) To fulfill its mandate, the Legislature vests CSU with broad authority over the purchase of supplies and equipment, and over employee expense reimbursements.

Education Code section 89036 authorizes CSU to enter agreements and prescribe policies and procedures for acquiring supplies and equipment. It provides: "Notwithstanding any other provision of law, the trustees shall prescribe policies and procedures for the acquisition of services, facilities, materials, goods, supplies, or equipment." (Ed. Code, § 89036, subd. (a)(2).)

Education Code section 89500 authorizes CSU to address matters of employee allowances and expense reimbursement. It provides: "*Notwithstanding any other provision of law*, the trustees shall provide by rule for the government of their appointees and employees, *pursuant to* this chapter and *other applicable provisions of law*, including, but not limited to: appointment; classification; terms; duties; pay and overtime pay; uniform and *equipment allowances*; travel expenses and allowances; rates for housing and lodging; moving expenses; leave of absence; tenure; vacation; holidays; layoff; dismissal; demotion; suspension; sick leave; reinstatement; and employer's contribution to employees', annuitants', and survivors' health benefits plans." (Ed. Code, § 89500 subd. (a)(1), italics added.)

7

"[T]here can be no doubt that public education is among the state's most basic sovereign powers."  (*Wells, supra*, 39 Cal.4th at p. 1195.)

The expenses Krug alleges—for computers, monitors, chairs, printers, electricity, internet, and other alleged business expenses—fall directly within CSU's authority to set rules for employee equipment allowances and the purchase of materials, supplies, and equipment.

## B.    Application

### 1.    Section 2802

#### a.    Express Language and Positive Indicia of Legislative Intent

Here, section 2802 contains no express words referring to governmental agencies nor positive indicia of a legislative intent to exempt such agencies from the statute.

Krug argues that an indication that the Legislature intended section 2802 to pertain to public employers does exist, because section 2802 applies to "employers" generally, which some courts have held, in the absence of an express exception, to include public employers.  (E.g., *Flowers v. Los Angeles County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 79 (*Flowers*) [absent a specific exemption, a wage order covering "[e]very employer" was broad enough to subject public employers to a minimum wage requirement]; *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289 [a wage order's general terms applied to a public employer in the absence of an exemption]; *Marquez v. City of Long Beach* (2019) 32 Cal.App.5th 552 [same].)

In other words, Krug argues, general terms like "employer" include public employers unless defined to exclude them.

8

We are not persuaded. We remind Krug of the interpretive presumption at issue: "[A]bsent express words to the contrary, governmental agencies are not included within the general words of a statute." (*Wells*, *supra*, 39 Cal.4th at p. 1192.) Pursuant to this presumption, governmental agencies are *not* included within a general word such as "employer."

That positive indicia of Legislative intent may nevertheless bring governmental agencies within the ambit of an otherwise silent statute is an *exception* to this rule. Krug's formulation would supplant the rule with the exception, which we decline to do. Absence of a limitation on *employer* is merely legislative silence, not a positive indicium of Legislative intent.

b.     Sovereign Powers

The question thus becomes whether applying section 2802 to CSU would infringe upon its sovereign governmental powers, i.e., would affect the functions and responsibilities given to the public employer by the Legislature. We conclude it would.

CSU is a state agency to which the Education Code grants extensive powers to govern affairs relating to education. As pertinent here, Education Code sections 89036 and 89500 grants CSU the discretion to set rules for procuring equipment and establishing equipment allowances "notwithstanding any other provision of law." To subject CSU to the Labor Code's requirement regarding equipment expense reimbursement, i.e., to hold CSU to some standard other than that which it may in its discretion set for itself, would contravene the proviso stating that this discretion exists notwithstanding any other provision of law, and would necessarily curtail CSU's discretion and thus trench upon its sovereignty. Such sovereignty specifically in the example of

9

equipment procurement allows CSU to standardize equipment, negotiate for any price advantages attending bulk purchasing, and regulate technological diversity and the accompanying training needs for support personnel.

Moreover, liability to section 2802 would subject CSU to attorney fees awards in addition to reimbursement expenses. (§ 2802, subd. (c) ["the term 'necessary expenditures or losses' shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section," as well as expenses].) "Laws that divert limited educational funds from this core function are an obvious interference with the effective exercise" of sovereign power to provide public education. (*Wells*, *supra*, 39 Cal.4th at p. 1195.) "The Legislature is aware of the stringent revenue, budget, and appropriations limitations affecting all agencies of government—and public school districts in particular," so courts "cannot lightly presume an intent to force such entities" to pay not only legal judgments "but also to pay huge additional amounts, often into the pockets of outside parties," because "[s]uch a diversion of limited taxpayer funds would interfere significantly with government agencies' fiscal ability to carry out their public missions." (*Id.* at pp. 1195-1196.)

Applying section 2802 to CSU in this case would thus infringe upon its sovereign governmental powers in two ways. It would limit the discretion vested in CSU to establish policies for employee reimbursement for necessary expenses, and would potentially divert limited educational funds from CSU's core function to pay not only legal judgments but potentially huge additional amounts to outside parties.

10

Because section 2802 is silent about whether the term "employer" includes public employers, and there being no positive indicia to the contrary, its potential to infringe on CSU's sovereignty under the circumstances of this case compels us to conclude it does apply to Krug's claim for reimbursement for equipment expenses. CSU's demurrer to this claim was therefore properly sustained without leave to amend.

We do not hold that section 2802 can never apply to CSU, only that it does not apply in this case because Krug's claim falls squarely within the ambit of CSU's vested authority to set the terms for employee expense reimbursement.

Krug argues that reimbursing employees for equipment expenses would not infringe on CSU's ability to acquire materials and equipment as provided by Education Code section 89036, because reimbursement is not the same as acquisition. We would not, for example, suggest that CSU may refuse to pay for the goods or services it acquires. (See Ed. Code, § 89036, subd. (a)(1)–(4); Pub. Contract Code, §§ 10851, 10853 [requiring CSU to pay contractors with timely progress payments].) And in any event, he concludes, he did not acquire his supplies pursuant to CSU's authority under section 89036, but pursuant to CSU's policy requiring that he work from home. We agree with these sentiments. But we cite Education Code section 89036 not to suggest that Krug's computer was purchased pursuant to that section, nor to suggest CSU may fail to pay its contractors, but only to illustrate that CSU was granted broad powers to obtain the equipment it needs to function.

The real workhorse is Education Code section 89500, which specifically applies to employee equipment allowances, i.e., reimbursement to employees for equipment expenses, which is what Krug seeks here. Krug observes that this section obligates CSU to make rules for employee pay and expense allowances "pursuant to . . . other applicable provisions of law" (Ed. Code, § 89500, subd. (a)(1)), and argues that CSU must therefore comply with applicable provisions of the Labor Code, such as section 2802. (See *Slivkoff v. Board of Trustees* (1977) 69 Cal.App.3d 394, 403 [Education Code section 89500 does not exempt CSU from otherwise applicable law].)

But to act "pursuant to" a statute requires nothing if that statute requires nothing. Section 2802 is silent as to its application to a public employer. On the other hand, Education Code section 89500 grants CSU the discretion to make its own rules for reimbursement for equipment expenses "[n]otwithstanding any other provision of law." There is thus no conflict between Education Code section 89500 and our interpretation of section 2802, and CSU's exercise of discretion not to reimburse employees for equipment expenses contravenes no "other applicable provisions of law."

Krug argues that reading section 2802 to allow CSU broad discretion to deny reimbursement would be inconsistent with the Legislature's intent, expressed elsewhere, to require reimbursement. For example, he argues, although Government Code section 19820 limits reimbursement owed to certain state employees, and Government Code section 19850.1 limits a state employer's obligation to pay for employee uniforms, the Legislature has expressly excluded CSU from both benefits. (Gov. Code, §§ 19850, 19850.1.) This suggests, Krug argues, the Legislature did not want CSU to avoid reimbursements altogether.

12

This undercuts rather than supports Krug's reimbursement claim by demonstrating that when the Legislature wanted CSU to reimburse its employees it expressly said so. (See § 2802.1 [expressly deeming section 2802 as applicable to employees of state hospitals].)

      c.      Legislative History

Relying on pre-enactment decisional law, Krug argues that when Civil Code section 1969, section 2802's predecessor, was enacted in 1872, the commonly understood meaning of "employer" for indemnification purposes would have included public entities in 1872.

We do not disagree. But "[o]ur fundamental task is to determine the Legislature's intent to effectuate the law's purpose, giving the statutory language its plain and commonsense meaning. We examine that language, not in isolation, but in the context of the statutory framework as a whole to discern its scope and purpose and to harmonize the various parts of the enactment. [Citation.] 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' " (*Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1157-1158.) Only " '[i]f the statutory language permits more than one reasonable interpretation [may courts] consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] The wider historical circumstances of a law's enactment may assist in ascertaining legislative intent, supplying context for otherwise ambiguous language." (*Id*. at p. 1158.)

Here, the interpretive presumption that governmental entities are excluded from general language absent positive indicia to the contrary suffices to explain section 2802 without resort to its legislative history. That does not mean legislative

history is always irrelevant. In *Wells*, the Court held that the Legislature's deliberate deletion of any reference to public entities as covered "persons" in the California False Claims Act constituted a positive indication that it intended not to apply the term to a public entity without specific reference. (*Wells*, *supra*, 39 Cal.4th at pp. 1189-1192.) But we have no similar positive indication here.

In any event, that a general term may be understood generally is an unremarkable and irrelevant tautology because here we must presume that general terms do not include government agencies.

Krug observes that memoranda drafted in September 2000 for Governor Davis pertaining to the fiscal impact of an amendment to section 2802 stated there would be a state fiscal impact because section 2802 covers "an employer, including state agencies." (Enrolled Bill Memorandum on Sen. Bill No. 1305 prepared for Governor Davis (1999-2000 Reg. Sess.) Sept. 2000, p. 1; Department of Finance Enrolled Bill Report on Sen. Bill No. 1305 prepared for Governor Davis (1999-2000 Reg. Sess.) Aug. 2000, p. 1.)

We acknowledge this history. (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 939, fn. 19 [California considers "enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent"].) But these fiscal analyses do not contradict our interpretation of section 2802 today. We do not hold that section 2802 never applies to public employers, only that it does not apply in this case because the Legislature vested CSU with sovereign authority with which section 2802 would interfere. Krug cites several cases involving public entities in which no interference would result from application of section 2802. We have no quarrel with these cases, but they are not our case.

14

### d. Public Policy

Krug argues that "in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." (*Flowers*, *supra*, 243 Cal.App.4th at p. 82.) We agree. But no amount of liberality in construction will circumvent section 2802's silence concerning public employers, nor the inference we must draw from that silence.

### 2. PAGA

An "aggrieved employee" may seek civil penalties under PAGA. (§ 2699, subd. (c).) An aggrieved employee is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (*Ibid.*; see *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1114.) Because CSU did not violate section 2802, Krug is not an aggrieved employee for purposes of PAGA. His PAGA claim therefore fails with his section 2802 claim.

## DISPOSITION

The judgment is affirmed. Each side is to bear its own costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


BENDIX, Acting P. J.


WEINGART, J.

15