Filed 2/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WENDY MARQUEZ et al., | B282270 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC623334) |
| CITY OF LONG BEACH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge. Reversed and remanded with directions.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld, Lisl R. Soto and Alejandro Delgado for Plaintiffs and Appellants.

Rutan & Tucker and George W. Shaeffer, Jr., for Defendant and Respondent.

_____

Plaintiffs Wendy Marquez and Jasmine Smith appeal from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer filed by the City of Long Beach (City) to plaintiffs' class action complaint. Plaintiffs alleged causes of action for violations of the Labor Code and the Industrial Welfare Commission's (IWC) wage orders based on the City's alleged failure to pay workers employed as pages and recreation leader specialists wages at or above the statewide minimum wage.

The trial court found the authority to determine employee compensation was reserved to the City as a charter city under article XI, section 5 of the California Constitution, and the state could not impose a minimum wage for the City's employees because the City's compensation of its employees was not a matter of statewide concern. On appeal, plaintiffs contend the Legislature's interest in the provision of a living wage to all workers is a matter of statewide concern, and the minimum wage requirement is appropriately tailored to address that concern.

This case pits article XI, section 5 of the state Constitution, which grants to charter cities authority over municipal affairs, including "plenary authority" to provide for the compensation of city employees, against article XIV, section 1 of the state Constitution, which provides "[t]he Legislature may provide for minimum wages and for the general welfare of employees . . . ." Despite the century-long history of the home rule doctrine (see *Popper v. Broderick* (1899) 123 Cal. 456 (*Popper*)) and the state's regulation of the minimum wage (see Stats. 1913, ch. 324, pp. 632-637), the Supreme Court has not squarely resolved whether charter cities must comply with state law minimum wage requirements.

We conclude legislation setting a statewide minimum wage, generally applicable to both private and public employees,

2

addresses the state's interest in protecting the health and welfare of workers by ensuring they can afford the necessities of life for themselves and their families. Thus, the Legislature may constitutionally exercise authority over minimum wages, despite the constitutional reservation of authority in charter cities to legislate as to their municipal affairs. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Complaint*

On June 9, 2016 plaintiffs filed their putative class action complaint asserting causes of action under Labor Code sections 1182.12 and 1194,[1] as well as under section 4 of IWC Wage Order Nos. 4-2001 and 10-2001 (Cal. Code Regs., tit. 8, §§ 11040, 11100)[2] for the failure to pay the state minimum wage. The complaint alleged the City is a charter city, and Marquez, Smith, and approximately 200 employees have been employed by the City's

---

[1]    All further undesignated references are to the Labor Code.

[2]    Section 1182.12 establishes the applicable state minimum wage effective in each calendar year. Wage Order No. 4-2001 governs employees in the professional, technical, clerical, mechanical, and "similar" occupations; Wage Order No. 10-2001 governs employees in the amusement and recreation industry. The City does not dispute that section 1182.12 and Wage Order Nos. 4-2001 and 10-2001 apply to plaintiffs' work classifications. Section 1194, subdivision (a), provides that "any employee receiving less than the legal minimum wage . . . applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

Library Services Department and Parks, Recreation, and Marine Department during the relevant period. The City employed Marquez as a page and Smith as a recreation leader specialist. The complaint further alleged plaintiffs and the putative class are classified as nonexempt, hourly employees, and from January 1, 2016 until approximately April 18, 2016 the City paid the class members less than the legally mandated state minimum wage of $10.00 per hour. The complaint sought damages, civil penalties, and equitable relief.

B.     *The City's Demurrer*

In its demurrer, the City argued the plaintiffs' claims were barred under the home rule doctrine because wages set by charter cities are municipal affairs, not subject to state regulation. The City also asserted in its reply that charter cities did not come within the statutory definition of employers subject to the minimum wage requirement. Further, the wages to be paid to the City's pages and recreation leadership specialists were set by a memorandum of understanding (MOU) between the union representing those employees and the City, ratified by the City Council.[3] According to the City, application of the minimum wage to its employees would unlawfully impair the MOU.

After sustaining the City's demurrer without leave to amend, on March 2, 2017 the trial court entered a judgment dismissing the action with prejudice. Plaintiffs timely appealed.

---

[3]     On February 25, 2018 we granted the City's request for judicial notice of the relevant MOU and related City Council resolutions.

## DISCUSSION

A.    *Standard of Review*

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. [Citation.]  Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment."  (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)  When evaluating the complaint, "we assume the truth of the allegations . . . ."  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230; accord, *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)

In our analysis of whether a state law applies to a charter city, we "accord great weight to the factual record that the Legislature has compiled," but these factual findings "are not controlling."  (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 558 (*City of Vista*); accord, *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 286 (*County of Riverside*).)  "[T]he question whether in a particular case the home rule provisions of the California Constitution bar the application of state law to charter cities turns ultimately on the meaning and scope of the state law in question and the relevant state constitutional provisions. Interpreting that law and those provisions presents a legal question, not a factual one."  (*City of Vista*, at p. 558; accord, *County of Riverside*, at p. 286 ["The judicial branch, not the legislative, is the final arbiter of this question."].)

"We independently review the construction of statutes [citation] and begin with the text. If it 'is clear and unambiguous our inquiry ends.' [Citation.] Wage and hour laws are 'to be construed so as to promote employee protection.' [Citations.] These principles apply equally to the construction of wage orders." (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840; accord, *Kilby v. CVS Pharmacy, Inc.* (2016) 63 Cal.4th 1, 11 ["IWC regulations are liberally construed to protect and benefit employees."].)

B.    *The Trial Court Erred in Sustaining the City's Demurrer*
    1.    *California's minimum wage law*
    "Over a century ago, the Legislature responded to the problem of inadequate wages and poor working conditions by establishing the IWC, giving it authority to investigate various industries and promulgate wage orders establishing minimum wages, maximum work hours, and conditions of labor." (*Kilby v. CVS Pharmacy, Inc., supra*, 63 Cal.4th at p. 10.) The Legislature created the IWC in 1913, and delegated to it the power to set minimum wages and working conditions for women and children. (*Martinez v. Combs* (2010) 49 Cal.4th 35, 50 (*Martinez*), citing Stats. 1913, ch. 324, § 13, p. 637.) The 1913 act charged the IWC with setting labor conditions in accordance with "'the comfort, health, safety and welfare of such women and minors'" and setting "for each industry '[a] minimum wage to be paid to women and minors . . . adequate to supply . . . the necessary cost of proper living and to maintain [their] health and welfare.'" (*Martinez*, at pp. 54-55, quoting Stats. 1913, ch. 324, §§ 3, subd. (a), & 6, subd. (a), par. 1, pp. 633-634.)

    The same year, the Legislature "propos[ed] to the voters a successful constitutional amendment confirming the Legislature's

authority" to regulate the minimum wage and to delegate authority to the IWC, which the voters enacted as former article XX, section 17 ½ of the California Constitution. (*Martinez, supra*, 49 Cal.4th at p. 54 & fn. 20; accord, *Pacific G. & E. Co. v. Industrial Acc. Com.* (1919) 180 Cal. 497, 500.) The argument in support of the constitutional amendment was that protected employees "'should be certain of a living wage—a wage that insures for them the necessary shelter, wholesome food and sufficient clothing,'" and "that substandard wages frequently led to ill health and moral degeneracy." (*Martinez,* at p. 54, quoting Ballot Pamp., Gen. Elec. (Nov. 3, 1914) argument in favor of Assem. Const. Amend. No. 90, p. 29.)

The IWC set the first statewide minimum wage in 1916 by issuing industry- and occupation-wide wage orders, applicable to women and children. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*); *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 700.) The minimum wage for women and children was raised from time to time. In 1972 the Legislature extended the protections of the minimum wage to all employees, and "expanded the IWC's jurisdiction to include all employees, male and female, in response to federal legislation barring employment discrimination because of sex." (*Martinez, supra*, 49 Cal.4th at p. 55, citing Stats. 1972, ch. 1122, § 13, p. 2156.) In the following year, the Legislature "'restated the commission's responsibility in even broader terms,'" including an ongoing duty to review the adequacy of the minimum wage. (*Martinez*, at p. 55.)

Following this enlarged mandate, the voters "amended the state Constitution to confirm the Legislature's authority to confer on the IWC 'legislative, executive, and judicial powers.'" (*Martinez, supra*, 49 Cal.4th at p. 55, quoting Cal. Const., art. XIV,

7

§ 1 [added by Assem. Const. Amend. No. 40 (1975–1976 Reg. Sess.), as approved by voters (Prop. 14), Primary Elec. (June 8, 1976)], italics omitted.)  The 1976 constitutional amendment further provided "[t]he Legislature may provide for minimum wages and for the general welfare of employees . . . ."  (Cal. Const., art. XIV, § 1.)

"'The IWC's wage orders are to be accorded the same dignity as statutes.  They are "presumptively valid" legislative regulations of the employment relationship [citation], regulations that must be given "independent effect" separate and apart from any statutory enactments [citation].  To the extent a wage order and a statute overlap, we will seek to harmonize them, as we would with any two statutes.'"  (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1082, quoting *Brinker, supra*, 53 Cal.4th at p. 1027.)

The IWC continued periodically to raise the minimum wage by amendments to its wage orders.  On October 23, 2000 the IWC promulgated a wage order setting the minimum wage as of January 1, 2001 ($6.25 per hour) and January 1, 2002 ($6.75 per hour).  (Wage Order No. MW-2001; Cal. Code Regs., tit. 8, § 11000.)  That order also made the minimum wage provisions in wage orders regulating certain industries applicable for the first time to "employees directly employed by the State or any political subdivision thereof, including any city, county, or special district." (Cal. Code Regs., tit. 8, §§ 11040, subd. 1(B) [Wage Order No. 4-2001 governing employees in professional, technical, clerical, mechanical, and "similar" occupations] & 11100, subd. 1(C) [Wage Order No. 10-2001 governing employees in the amusement and recreation industry].)[4]

---

[4]     The wage orders are phrased in the negative to read that, except as to specified sections, including the minimum wage

8

"The Legislature defunded the IWC in 2004, however its wage orders remain in effect." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102, fn. 4; accord, *Flowers v. Los Angeles County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 74, fn. 2 (*Flowers*).) After defunding the IWC, the Legislature began in 2006 to set a statutory minimum wage, made applicable to employees through amendment and republication of the IWC wage orders to be consistent with the statutory minimum wage. (Stats. 2006, ch. 230, § 2, pp. 2078-2079 [Assem. Bill No. 1835]; see § 1182.13, subd. (b) ["The Department of Industrial Relations shall amend and republish the [IWC's] wage orders to be consistent with . . . Section 1182.12."].)

In 2013 the Legislature again enacted graduated increases in the minimum wage, effective July 1, 2014 ($9.00 per hour) and January 1, 2016 ($10.00 per hour). (Stats. 2013, ch. 351, § 1 [Assem. Bill No. 10].) Most recently, effective January 1, 2017 the Legislature set a series of graduated increases in the minimum wage to take effect each year on January 1, culminating in a $15.00 per hour minimum wage for all covered employees effective January 1, 2023, with limited exceptions. (See § 1182.12, subd. (b)(1)-(2).) Section 1182.12, subdivision (b)(3), also provides that "[f]or purposes of this subdivision [setting the minimum wage], 'employer' includes the state, political subdivisions of the state, and municipalities."

---

provisions in section 4, the wage orders *do not* apply to employees of the state, cities, counties, or special districts. (See, e.g., Cal. Code Regs., tit. 8, §§ 11040, subd. 1(B) & 11100, subd. 1(C).)

2. *The home rule doctrine and state regulation of charter city and county wages and other employment relations*

The Government Code classifies cities as either charter cities, organized under a charter (Gov. Code, § 34101), or general law cities, organized under the general law of California (Gov. Code, § 34102). (*City of Vista, supra*, 54 Cal.4th at p. 552, fn. 1; *People v. Chacon* (2007) 40 Cal.4th 558, 571, fn. 13; *Jauregui v. City of Palmdale* (2014) 226 Cal.App.4th 781, 794-795 (*Jauregui*).) The parties agree the City is a charter city.

"Charter cities are specifically authorized by our state Constitution to govern themselves, free of state legislative intrusion, as to those matters deemed municipal affairs." (*City of Vista, supra*, 54 Cal.4th at p. 555; accord, *Jauregui, supra*, 226 Cal.App.4th at p. 795.) Article XI, section 5, subdivision (a), of the California Constitution "represents an 'affirmative constitutional grant to charter cities of "all powers appropriate for a municipality to possess . . ." and [includes] the important corollary that "so far as 'municipal affairs' are concerned," charter cities are "supreme and beyond the reach of legislative enactment."'" (*City of Vista*, at p. 556.)

"However, a charter city's authority to enact legislation is not unlimited." (*Jauregui, supra*, 226 Cal.App.4th at p. 795.) "[T]he Legislature may regulate as to matters of statewide concern even if the regulation impinges 'to a limited extent' [citation] on powers the Constitution specifically reserves to counties ([Cal. Const., art. XI,] § 1) or charter cities ([Cal. Const., art. XI,] § 5)."[5]

---

[5] Article XI, section 1, subdivision (b), of the California Constitution, provides that counties "shall provide for the number, compensation, tenure, and appointment of employees." Article XI, section 5, subdivision (b), similarly provides that charter cities

10

(*County of Riverside, supra*, 30 Cal.4th at p. 287; accord, *Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276, 295 (*Professional Fire Fighters*) ["legislation may impinge upon local control to a limited extent, but it is nonetheless a matter of state concern"].) "'Some portions of a local matter may ultimately become of general state interest.'" (*Lippman v. City of Oakland* (2017) 19 Cal.App.5th 750, 763 [uniformity in building code is statewide concern]; accord, *City of Vista, supra*, 54 Cal.4th at p. 557 ["'"the constitutional concept of municipal affairs is not a fixed or static quantity . . . [but one that] changes with the changing conditions upon which it is to operate"'"] (italics omitted)].)

In areas considered "municipal affairs," the general law of the state prevails over local law only where the general law is "'reasonably related'" and "'narrowly tailored'" to resolution of an issue of statewide concern. (*City of Vista, supra*, 54 Cal.4th at p. 556; accord, *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 7 (*California Fed. Savings*) ["In the event of a true conflict between a state statute reasonably tailored to the resolution of a subject of statewide concern and a charter

_____

have plenary authority over the "compensation, method of appointment, qualifications, tenure of office and removal of [their] deputies, clerks and other employees." The cases addressing the home rule doctrine have applied the same analysis to the authority of charter counties under article XI, section 1, and charter cities under article XI, section 5, to set the compensation for their employees. (See *City of Vista, supra*, 54 Cal.4th at pp. 555-556 [applying home rule doctrine to charter city]; *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 316 ["Similar rules apply to charter counties."].)

11

city [ordinance], the latter ceases to be a 'municipal affair' to the extent of the conflict and must yield."].)

The Supreme Court has considered the extent to which the state may regulate charter city employee compensation and other employment issues many times. In *Popper,* the Supreme Court addressed the constitutionality of two 1897 state statutes specifying the salaries for various ranks of police officers and firefighters employed by municipalities of the first class.[6] (*Popper, supra*, 123 Cal. at pp. 456-457, 459.) The court invalidated the statutes, concluding "the pay of firemen and policemen clearly falls within the term 'municipal affairs.'" (*Id.* at p. 462.)

In *City of Pasadena v. Charleville* (1932) 215 Cal. 384 (*Charleville*), the Supreme Court held the City of Pasadena, as a charter city, was not required to comply with the Public Works Wage Rate Act of 1931, which required that any contract for public works pay the prevailing wage for the type of work in the locality in which the work was to be performed. (*Charleville*, at pp. 389-390, 400.) The court concluded the Legislature lacked the authority to bind the city to the statutory scheme because the construction of public works projects was a municipal affair. (*Id.* at p. 389; see *San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 790 (*San Francisco Labor Council*) [state could not compel the Regents of the University of California to pay prevailing wages to university employees because the requirement was "not a matter of statewide concern"].)

---

[6] At the time of *Popper*, a municipality of the first class "include[d] 'all municipal corporations . . . having a population of more than one hundred thousand' (Stats. 1883, p. 24)." (*Denman v. Broderick* (1896) 111 Cal. 96, 105.)

In *Healy v. Industrial Acc. Com.* (1953) 41 Cal.2d 118 (*Healy*), the Supreme Court held the statewide system of workers' compensation was a subject of statewide concern, and superseded the City of Los Angeles's charter provision requiring an injured employee's workers' compensation award be offset by the worker's pension. (*Id.* at p. 122.) The Labor Code "prohibit[ed] an employer from directly or indirectly taking any contribution from the earnings of an employee to cover any part of the cost of compensation," but a conflicting provision of the city charter mandated an employee's pension be subtracted from the award. (*Id.* at pp. 121-122.) Finding the workers' compensation scheme to be of "state-wide concern," the Supreme Court held the provision of the Labor Code was "paramount" to the inconsistent local law, and remanded for the trial court to make factual findings as to the employee's contributions to the pension fund. (*Id.* at p. 122.)

The Supreme Court again considered the home rule doctrine in *Professional Fire Fighters.* There, a union representing firefighters working for the City of Los Angeles sued to establish members' right to join a labor union under the Labor and Government Codes. (*Professional Fire Fighters, supra*, 60 Cal.2d at pp. 279-280 & fn. 1.) The court concluded that because the legislation was designed to "create uniform fair labor practices throughout the state," it "may impinge upon local control to a limited extent, but it is nonetheless a matter of state concern." (*Id.* at p. 295.) The court reasoned that while "management and control of [fire] department[s], in the general sense of that phrase, is a municipal affair," the "general law prevails over local enactments of a chartered city, even in regard to matters which would otherwise be deemed to be strictly municipal affairs, where the subject matter of the general law is of statewide concern." (*Id.* at p. 292.) The court noted the legislation did not "deprive local

government (chartered city or otherwise) of the right to manage and control its fire departments." (*Id.* at p. 294; see *Baggett v. Gates* (1982) 32 Cal.3d 128, 139-140 (*Baggett*) [upholding imposition of state procedural protections for peace officers before they could be removed or punished, finding the maintenance of stable employment relations between police officers and their public employers was a matter of statewide concern given the impact a breakdown in relations would have on delivery of the police's essential public service]; see also *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, 600-601 & fn. 11 (*Seal Beach*) [upholding state requirements that cities "meet and confer" with employee representatives before modifying employment terms and conditions for employees, but concluding the requirements did not conflict with the charter city's authority].)

The Supreme Court returned to the question of state regulation of public employee wages in *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296 (*Sonoma County*). There, the court invalidated a state law prohibiting the distribution of state surplus or loan funds to any local public agency granting to its employees a cost-of-living wage or salary increase that exceeded the increase the state provided to its employees for the fiscal year. (*Id.* at p. 302.) Relying on *Popper* and *Charleville*, the court concluded the state law was an impermissible infringement on municipal affairs, rejecting the Legislature's express statutory finding that a statewide fiscal emergency warranted the infringement. (*Sonoma County*, at pp. 317-318.)[7]

_____

[7] The *Sonoma County* court also invalidated the legislation as an unconstitutional impairment of public agencies' binding

14

In *County of Riverside*, the Supreme Court invalidated a statute requiring certain public entities to submit disputes over firefighter and law enforcement officer wages to binding arbitration, rejecting the legislative findings that avoidance of strikes in these sectors was a matter of statewide concern. (*County of Riverside, supra*, 30 Cal.4th at pp. 282, 286.) The court distinguished *Professional Fire Fighters*, *Baggett*, and *Seal Beach* as involving the procedural regulation of labor relations, whereas the state law at issue involved a substantive regulation with the effect of "*depriving* the county entirely of its authority to set employee salaries" by outsourcing that function to a private arbitrator. (*County of Riverside*, at pp. 287-289.)

Most recently, the Supreme Court in *City of Vista* revisited the issue of the constitutionality of state prevailing wage laws for public works projects. (*City of Vista, supra*, 54 Cal.4th at p. 552.) There, a federation of labor unions sought to compel the City of Vista to pay the prevailing wage in the local construction industry, as required by state law. (*Ibid.*) The court applied the four-part test set forth in *California Fed. Savings* for determining whether a matter falls within the home rule authority of a charter city. Under this "analytical framework," the court must consider (1) "whether the city ordinance at issue regulates an activity that can be characterized as a 'municipal affair'"; (2) whether there is "'an actual conflict between [local and state law]'"; (3) "whether the state law addresses a matter of 'statewide concern'"; and (4) "whether the law is 'reasonably related to . . . resolution' of that concern [citation] and 'narrowly tailored' to avoid unnecessary

---

contracts with their employees. (*Sonoma County, supra*, 23 Cal.3d at p. 314.)

interference in local governance." (*City of Vista,* at p. 556, quoting *California Fed. Savings, supra*, 54 Cal.3d at pp. 16-17, 24.)

"'If . . . the court is persuaded that the subject of the state statute is one of statewide concern and that the statute is reasonably related to its resolution [and not unduly broad in its sweep], then the conflicting charter city measure ceases to be a "municipal affair" pro tanto and the Legislature is not prohibited by article XI, section 5(a), from addressing the statewide dimension by its own tailored enactments.'" (*City of Vista, supra*, 54 Cal.4th at p. 556, quoting *California Fed. Savings, supra*, 54 Cal.3d at p. 17.)

Applying this analysis, the court reaffirmed its holdings in *Charleville* and *Sonoma County*, finding "the wage levels of contract workers constructing locally funded public works are a municipal affair . . . , and that these wage levels are not a statewide concern . . . subject to state legislative control . . . ." (*City of Vista, supra*, 54 Cal.4th at p. 556.)  However, the court cautioned, "'[C]ourts should avoid the error of "compartmentalization," that is, of cordoning off an entire area of governmental activity as either a "municipal affair" or one of statewide concern.'" (*Id*. at p. 557.)  The court added, "'When a court invalidates a charter city measure in favor of a conflicting state statute, the result does not necessarily rest on the conclusion that the subject matter of the former is not appropriate for municipal regulation.  It means, rather, that *under the historical circumstances presented*, the state has a more substantial interest in the subject than the charter city.'" (*Id*. at pp. 557-558.)

After finding an actual conflict between the state statute and the city's prohibition on payment of prevailing wages in public works contracts, the court turned to the issue of whether the construction of public works was a statewide concern, considering

16

whether there was "'a convincing basis' for the state's action—a basis that 'justif[ies]' the state's interference in what would otherwise be a merely local affair." (*City of Vista, supra*, 54 Cal.4th at p. 560.) The court rejected the unions' arguments that the benefit to the economic health of the construction industry was a statewide concern sufficient to justify state infringement on local authority over wages. (*Id.* at p. 561.) Reasoning that "[a]utonomy with regard to the expenditure of public funds lies at the heart of what it means to be an independent governmental entity," the court found the unions could not "justify state regulation of the spending practices of charter cities merely by identifying some indirect effect on the regional and state economies." (*Id.* at p. 562.)

The *City of Vista* court added, "our cases have suggested that a state law of broad general application is more likely to address a statewide concern than one that is narrow and particularized in its application." (*City of Vista, supra*, 54 Cal.4th at p. 564.) On this basis, the Supreme Court distinguished its prior holdings in *Seal Beach* and *Professional Fire Fighters*, in which it found generally applicable procedural standards "impinged less on local autonomy than if they had imposed substantive obligations." (*City of Vista*, at p. 564.)

The court concluded, "Here, the state law at issue is not a minimum wage law of broad general application; rather, the law at issue here has a far narrower application, as it pertains only to the public works projects of public agencies. In addition, it imposes substantive obligations on charter cities, not merely generally applicable procedural standards. These distinctions further undermine the Union's assertion that the matter here presents a statewide concern and therefore requires Vista, a charter city, to comply with the state's prevailing wage law on the city's locally

17

funded public works projects." (*City of Vista, supra*, 54 Cal.4th at pp. 564-565.)

We take from these cases that article XI, section 5, of the state Constitution limits the Legislature's authority to determine the wages of charter city employees, to cap those wages, and to outsource to a third party the authority to determine employee wages. However, the Legislature may enact laws of broad general application that impact charter city compensation where the state law's infringement on local authority is reasonably related to an important statewide concern.

> 3. *The state minimum wage law is designed to address a statewide concern for the health and welfare of workers and is reasonably related to its purpose*

To determine whether the state's minimum wage law may be applied to the City, as a charter city, we apply the four-part analysis set forth by the Supreme Court in *City of Vista, supra*, 54 Cal.4th at page 556.

> > a. Compensation of charter city employees is a municipal affair under section 5 of article XI of the California Constitution

"'[T]here is no question that "salaries of local employees of a charter city constitute municipal affairs . . . ."'" (*City of Vista, supra*, 54 Cal.4th at p. 564.) Article XI, section 5, subdivision (b)(4), of the state Constitution, confers to charter cities "plenary authority . . . , subject only to the restrictions of this article, to provide . . . for the compensation . . . of [their] deputies, clerks and other employees." However, our inquiry does not end there. A "'general law prevails over local enactments of a chartered city, even in regard to matters which would otherwise be deemed to be

18

strictly municipal affairs, where the subject matter of the general law is of statewide concern.'" (*Seal Beach, supra*, 36 Cal.3d at p. 600, quoting *Professional Fire Fighters, supra*, 60 Cal.2d at p. 292; accord, *Jauregui, supra*, 226 Cal.App.4th at p. 803 [Even "[t]he plenary authority identified in [the California Constitution,] article XI, section 5, subdivision (b) can be preempted by a statewide law after engaging in the four-step evaluation process specified by our Supreme Court."].)

> b.  The minimum wage requirement is in conflict with the City's resolution and MOU setting wages

We must first determine the existence of an actual conflict between the state and local laws at issue "before proceeding to the difficult state constitutional question of which law governs a particular matter." (*City of Vista, supra*, 54 Cal.4th at p. 559; accord, *California Fed. Savings, supra*, 54 Cal.3d at pp. 16-17 ["To the extent difficult choices between competing claims of municipal and state governments can be forestalled in this sensitive area of constitutional law, they ought to be; courts can avoid making such unnecessary choices by carefully insuring that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other."].)

Plaintiffs and the City contend there is no conflict, but for different reasons.  They are both incorrect.

> (i)  The wage orders' minimum wage provisions apply to the City

The City contends sections 1182.12 and 1194 do not by their terms apply to charter cities, thus obviating any conflict.  We disagree.  "[W]age and hour claims are today governed by two

19

complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." (*Brinker, supra*, 53 Cal.4th at p. 1026; accord, *Vaquero v. Stoneledge Furniture, LLC* (2017) 9 Cal.App.5th 98, 105-106 [same].) Although the City is correct that during the relevant period in 2016 former sections 1182.12 and 1194 were silent as to whether they applied to state and local governments, the relevant IWC wage orders were not.[8]

"In actions under section 1194 to recover unpaid minimum wages, the IWC's wage orders do generally define the employment relationship, and thus who may be liable." (*Martinez, supra*, 49 Cal.4th at p. 52; accord, *Flowers, supra*, 243 Cal.App.4th at p. 74 ["Specific employers and employees become subject to the minimum wage requirements only through and under the terms of wage orders . . . . [Citation.] Accordingly, 'an employee who sues to recover unpaid minimum wages actually and necessarily sues to enforce the wage order.'"].) As noted above, "[t]he IWC's wage orders are to be accorded the same dignity as statutes," and "[t]hey are 'presumptively valid' legislative regulations of the employment relationship . . . ." (*Brinker, supra*, 53 Cal.4th at p. 1027.)

Here, the express terms of IWC Wage Order Nos. 4-2001, section 1(B), and 10-2001, section 1(C), make their minimum wage

---

[8] Addressing plaintiffs' claims for prospective relief, the City also argues we should not rely on the 2016 amendments to section 1182.12, effective January 1, 2017, that define "employer[s]" subject to the section to include "the state, political subdivisions of the state, and municipalities," to conclude the minimum wage law applies to charter cities. (§ 1182.12, subd. (b)(3).) Because we conclude IWC Wage Order Nos. 4-2001 and 10-2001 make the state minimum wage applicable to charter cities, we do not reach this contention.

20

provisions applicable to "any city." (See Cal. Code Regs., tit. 8, § 11040, subd. 1(B) ["Except as provided in Sections 1, 2, 4 [minimum wage], 10, and 20, the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including *any city*, county, or special district." (Italics added.)]; Cal. Code Regs., tit. 8, § 11100, subd. 1(C) [same].) Section 4 of both applicable wage orders requires "[e]very employer" to pay a specified minimum wage to its employees. And neither wage order contains an exception from the minimum wage requirements for public entity employers such as the City.

As the court explained in *Sheppard v. North Orange County Regional Occupational Program* (2010) 191 Cal.App.4th 289 (*Sheppard*) in concluding IWC Wage Order No. 4-2001 applied to public school district employees, "[W]e interpret the language of Wage Order No. 4-2001, by its terms, to impose the minimum wage provision as to all employees in the occupations described therein, including employees directly employed by the state or any political subdivision of the state." (*Sheppard*, at pp. 300-301; accord, *Stoetzl v. State of California* (2017) 14 Cal.App.5th 1256, 1271 [concluding minimum wage provision of IWC Wage Order No. 4-2001 applied to state employees absent superseding state legislative enactment], review granted Nov. 29, 2017, S244751.)

The City seeks to distinguish *Sheppard* by noting it predates the amendment to section 1197, effective January 1, 2016, which the City asserts altered the applicability of the wage orders. However, that amendment had no effect on the applicability of the wage orders, but instead confirms their continuing operation. (See § 1197 ["The minimum wage for employees fixed *by the commission* or by any applicable state or local law, is the minimum wage to be paid to employees . . . ." (Italics added.)].) The

amendment to section 1197 was intended to authorize the Labor Commissioner to investigate and enforce violations of local minimum wage laws, not to abrogate the applicability of IWC wage orders to specific entities. (See Legis. Counsel's Dig., Assem. Bill No. 970 (2015-2016 Reg. Sess.) Stats. 2015, ch. 783, Summary Dig. ["This bill . . . authorize[s] the Labor Commissioner to investigate and, upon a request from the local entity, to enforce local laws regarding overtime hours or minimum wage provisions . . . ."].)

We agree with *Sheppard* and *Stoetzl*, and likewise conclude the minimum wage provisions of IWC Wage Order Nos. 4-2001 and 10-2001 apply to public employees. Further, their application to "any city" under section 1 necessarily includes both charter and general law cities.

(ii) The minimum wage requirement cannot be reconciled with the City's charter and the enactments of its council

Plaintiffs contend there is no conflict between the state minimum wage law and the City Charter because the City is free to determine the wages of its employees, so long as those wages are at or above the state minimum. However, the City's charter provides that wages for the City's employees are to be set by the City Council. (Long Beach City Charter, art. V, § 503.) And the MOU setting plaintiffs' wages was adopted by a City Council resolution.

Thus, the City's enactment setting subminimum wages conflicts with the state's minimum wage requirements. (See *City of Vista, supra*, 54 Cal.4th at pp. 553, 559-560 [state law requiring payment of prevailing wage on public works contracts conflicted with city ordinance prohibiting any city contract from requiring

22

payment of prevailing wages unless authorized by city council];
*Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276, 1284
(*Dimon*) [finding conflict between state meal period requirements
and county charter where "MOU specifically covers meal periods"
in a different manner from state requirements]; *Curcini v. County
of Alameda* (2008) 164 Cal.App.4th 629, 648 (*Curcini*) [finding
conflict between state overtime and meal and rest period
regulations and county regulations, ordinances, and MOU's
addressing employee compensation].)

Because there is an actual conflict between the state
minimum wage law and the City Charter, we consider whether the
minimum wage is a matter of statewide concern.

> c. The minimum wage for California workers is a
> matter of statewide concern

"When, as here, state law and the ordinances of a charter
city actually conflict and we must decide which controls, 'the hinge
of the decision is the identification of a convincing basis for
legislative action originating in extramunicipal concerns, one
justifying legislative supersession based on sensible, pragmatic
considerations.' [Citation.] In other words, for state law to control
there must be something more than an abstract state interest, as
it is always possible to articulate some state interest in even the
most local of matters." (*City of Vista, supra*, 54 Cal.4th at p. 560,
quoting *California Fed. Savings, supra*, 54 Cal.3d at p. 18.) We
therefore consider the concerns the Legislature sought to address
by setting a statewide minimum wage.

"The minimum wage represents the Legislature's and the
[IWC's] best estimate of the minimum an employee working a full-
time job must be paid to sustain such employee as a resident of
this state and pay for the necessities of life." (*Vasquez v. Franklin*

23

*Management Real Estate Fund, Inc.* (2013) 222 Cal.App.4th 819, 831 [concluding state minimum wage law was fundamental policy for purposes of claims for wrongful termination and constructive discharge in violation of public policy]; accord, *Flowers, supra*, 243 Cal.App.4th at p. 82 ["'State wage and hour laws "reflect the strong public policy favoring protection of workers' general welfare and 'society's interest in a stable job market.'"'"].)  Indeed, the Labor Code vests authority in the IWC to investigate whether "in any occupation, trade, or industry, the wages paid to employees may be inadequate to supply the cost of proper living" (§ 1178) and, if it finds the wages are inadequate, to select a wage board to "report to the commission its recommendation of a minimum wage adequate to supply the necessary cost of proper living . . . , and maintain the health and welfare of employees in this state" (§ 1178.5, subd. (a)).

As discussed above, in 1913 the Legislature proposed a constitutional amendment, later adopted by the voters, confirming the Legislature's authority to regulate the minimum wage and to delegate authority to the IWC.  The amendment reflected the concern that workers "'should be certain of a living wage—a wage that insures for them the necessary shelter, wholesome food and sufficient clothing,'" and "that substandard wages frequently led to ill health and moral degeneracy." (*Martinez, supra*, 49 Cal.4th at p. 54, quoting Ballot Pamp., Gen. Elec. (Nov. 3, 1914) argument in favor of Assem. Const. Amend. No. 90, p. 29.)

Legislative reports accompanying the Legislature's statutory increases to the minimum wage in recent years have consistently stated the purpose to provide California workers with a living wage to address poverty in the state.  (See, e.g., Assem. Com. on Labor and Employment, Off. of Assem. Floor Analyses, 3d reading analysis of Assem. Bill No. 1835 (2005-2006 Reg. Sess.) as

24

amended April 5, 2006, p. 3 [minimum wage increase was part of the "solution to the growing problem of poverty-level wages in our state"]; Assem. Com. on Labor and Employment, Analysis on Assem. Bill No. 10 (2013-2014 Reg. Sess.) September 12, 2013, p. 1 [legislation setting the $9.00 and $10.00 per hour minimum wages reflects a concern that workers "'at the bottom of the wage scale [are] mired in poverty, [and] over recent decades the real value of their earnings has collapsed'"]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 10 (2013-2014 Reg. Sess.) Sept. 12, 2013, p. 5 [legislation was designed to provide relief "to millions of struggling Californians"].)  The 2016 amendment to the law reflects similar concerns.  (Sen. Com. on Labor and Industrial Relations, com. on Sen. Bill No. 3 (2015-2016 Reg. Sess.) Mar. 31, 2016, p. 5 ["Proponents argue that the existing minimum wage is simply too little for a family to survive on . . . .  [Sen. Bill No.] 3 will ensure that the minimum wage is sufficient to keep families above the poverty line . . . ."].)

The Legislature's interest in the provision of a living wage also directly implicates the state's own coffers because employees receiving wages below the statewide minimum are more likely to receive state-funded public assistance.  The legislative history accompanying the 2013 statute setting the $10.00 per hour minimum wage notes projected savings on state public assistance spending.  (See Sen. Appropriations Com., Fiscal Summary on Assem. Bill No. 10 (2013-2014 Reg. Sess.) Aug. 30, 2013, p. 3 ["By raising the earnings of some public assistance recipients, this measure would result in reduced state costs."].)  The 2016 amendments reflect a similar concern.  (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis on Sen. Bill No. 3 (2015-2016 Reg. Sess.) March 31, 2016, p. 6 [projecting "offsetting savings to Medi-Cal and CalWORKS programs"].)

As the Supreme Court observed in *Johnson v. Bradley* (1992) 4 Cal.4th 389, 407, "We do not doubt that conservation of the *state's* limited funds is a statewide concern." The court concluded, however, that a state law ban on public funding of political campaigns was not justified by a statewide interest because the ban would impact the local funding of campaigns, not state funding. (*Ibid*.)

While the views of the Legislature are not binding on this court, they are relevant and entitled to "great weight." (*City of Vista, supra*, 54 Cal.4th at p. 565; accord, *County of Riverside, supra*, 30 Cal.4th at pp. 286-287 ["'[I]t may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern.'"].) In this case, the concerns that led the Legislature to adopt and increase the statewide minimum wage justify application of the minimum wage to all employees, including those of charter cities. Beginning in 1913, the Legislature has consistently acted, whether directly or through the IWC, to ensure those employed in California are paid a wage sufficient to provide for their health and well-being.

Our conclusion is bolstered by the scope of the state's minimum wage mandate. "[A] state law of broad general application is more likely to address a statewide concern than one that is narrow and particularized in its application." (*City of Vista, supra*, 54 Cal.4th at p. 564.) Here, the state's minimum wage requirement is of broad general application, applying to every industry regulated by the IWC wage orders, and to the private and public sectors alike. This is in contrast to the state compensation laws the Supreme Court has invalidated under the home rule doctrine. (See, e.g., *ibid.* [prevailing wage law applied

26

only to contracts for public works projects]; *County of Riverside, supra*, 30 Cal.4th at p. 282 [statute requiring binding arbitration of wage disputes with firefighter and police unions]; *San Francisco Labor Council, supra*, 26 Cal.3d at p. 790 [law requiring Regents of the University of California to pay prevailing wages]; *Sonoma County, supra*, 23 Cal.3d at p. 302 [law nullifying agreements between localities and their public employees for cost-of-living wage increases]; *Charleville, supra*, 215 Cal. at pp. 389-390, 400 [prevailing wage law applied only to municipal contracts for public works projects]; *Popper, supra*, 123 Cal. at pp. 456-457, 459 [laws specifying salaries for police officers and firefighters in municipalities with populations over 100,000].)

As pointed out by the City, it is true the Supreme Court has countenanced procedural laws encroaching on local authority more readily than substantive measures like the minimum wage law at issue here. (See *Seal Beach, supra*, 36 Cal.3d at pp. 600-601 & fn. 11; *Baggett, supra*, 32 Cal.3d at pp. 139-140; *Professional Fire Fighters, supra*, 60 Cal.2d at pp. 294-295.) However, the distinction between substantive and procedural measures is not determinative, and substantive laws displacing local authority over municipal affairs have been upheld by the courts. (See *Healy, supra*, 41 Cal.2d at p. 122 [upholding Legislature's "complete system of workmen's compensation which obviously is a subject of state-wide concern"]; *Jauregui, supra*, 226 Cal.App.4th at pp. 788, 799-801 [upholding application of California Voting Rights Act of 2001 to enjoin certification of at-large city council election results on basis of statewide concerns of race-based vote dilution and local election integrity].)

Like the workers' compensation law in *Healy*, minimum wage requirements are substantive regulations that directly implicate municipal interests in compensation of their employees.

27

But also like the statewide workers' compensation scheme, the statewide minimum wage requirement serves the fundamental purpose of protecting the health and welfare of workers. (See § 3202 [Workers' compensation provisions of the Labor Code "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."]; *Andersen v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 1369, 1375-1376 ["The purpose of workers' compensation is to extend its benefits for the protection of persons injured on the job."].)

The City attempts to distinguish *Healy* by reference to the constitutional provision granting the Legislature its workers' compensation authority. (Cal. Const., art. XIV, § 4 ["The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation . . . ."].) However, the Constitution also provides express authority to the Legislature to set a minimum wage. (*Id.*, § 1 ["The Legislature may provide for minimum wages and for the general welfare of employees . . . ."].)

The City also contends the Supreme Court's opinions invalidating the prevailing wage laws in *City of Vista*, *San Francisco Labor Council*, and *Charleville* mandate the same result here because prevailing wage laws are a form of minimum wage laws, pointing to the language in our opinion in *Reyes v. Van Elk, Ltd.* (2007) 148 Cal.App.4th 604, 612, that "[i]t is well established that California's prevailing wage law is a minimum wage law." But this statement in *Reyes* was in the context of whether an employee has a private right to recover unpaid prevailing wages

28

from an employer under section 1194, not the home rule doctrine.[9] (*Reyes*, at p. 612.) We distinguished the statement in *San Francisco Labor Council* to the contrary as inapplicable to the issue in *Reyes*. (*Id.* at p. 612, fn. 6.) As the Supreme Court observed in *San Francisco Labor Council*, "Prevailing wage regulations are substantially different from minimum wage statutes." (*San Francisco Labor Council, supra*, 26 Cal.3d at p. 790.)

Indeed, a prevailing wage law has a greater impact on local control than the minimum wage law because by requiring payment of wages prevailing in an industry locally, the law is "effectively a salary setting statute." (*San Francisco Labor Council, supra*, 26 Cal.3d at p. 790.) By contrast, the minimum wage requirement does not effectively determine the wage for all employment relationships it regulates, but rather, sets as a floor the lowest permissible hourly rate of compensation.[10] Thus, the

---

[9] The City also cites to similar dicta in *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244 that "in some instances, the Legislature has enacted prevailing wage statutes that have been construed as minimum wage laws." (*Id.* at p. 1252, citing to *Metropolitan Water Dist. v. Whitsett* (1932) 215 Cal. 400, 417-418.) However, *Kirby* did not address the home rule doctrine, nor did it concern prevailing wages. Rather, the court considered whether an employee prevailing on a claim for compensation for missed rest periods could recover attorneys' fees under section 1194. (*Kirby*, at p. 1254.)

[10] That the minimum wage requirement would not function as a salary setting statute for the City is illustrated by the record. The salary schedule attached to the City's 2015 salary resolution reveals that out of hundreds of employee classifications just six classifications were scheduled to be paid an hourly rate less than the $10.00 minimum wage during the subject period. The City

impact of the minimum wage law is consistent with the Supreme Court's conclusion "the Legislature may regulate as to matters of statewide concern even if the regulation impinges 'to a limited extent'" on local control of municipal affairs.  (*County of Riverside, supra*, 30 Cal.4th at p. 287; accord, *Professional Fire Fighters, supra*, 60 Cal.2d at pp. 294-295.)

The Court of Appeal opinions relied on by the trial court, analyzing whether counties are required to comply with state labor laws governing overtime pay and meal and rest periods, do not address whether the minimum wage law relates to a matter of statewide concern.  In *Curcini*, the First District considered whether provisions of the Labor Code and IWC wage orders requiring payment of overtime wages and compensation for missed meal and rest periods were issues of "compensation" reserved to county control.  (*Curcini, supra*, 164 Cal.App.4th at pp. 642-645.) Although the plaintiffs (former jail chaplains) alleged the County of Alameda denied them meal breaks and rest periods, which they argued related to their working conditions, the court observed the plaintiffs were "actually seeking monetary compensation for having been required to work through meal and rest breaks."  (*Id.* at p. 644.)  On this basis the court concluded the plaintiffs' claims for overtime and premium wages for missed meal and rest periods were "compensation matters . . . of local rather than statewide concern." (*Id.* at pp. 643, 645.)  The court did not reach whether there was a statewide interest in the regulation of worker meal and rest periods, as opposed to the payment of premium wages.

---

later enacted a resolution mandating that as of September 13, 2016 its employees be paid no less than the statewide minimum wage, and setting a range of salaries above this level.

30

In *Dimon*, our colleagues in Division Four addressed a deputy probation officer's claim against the County of Los Angeles for failure to provide her meal periods or premium pay for missed meals, as required by state labor laws. (*Dimon, supra*, 166 Cal.App.4th at p. 1279.) The court adopted the reasoning of *Curcini* that the plaintiff's claim was "'actually seeking monetary compensation,'" and therefore was a matter of local, rather than statewide concern. (*Dimon*, at pp. 1282-1283.) The court then analyzed whether the Legislature could regulate meal breaks as a matter of statewide concern on the asserted basis that meal breaks "'increase worker safety.'" (*Id*. at p. 1289.) The court rejected this argument because the complaint did not allege a state interest in worker safety, nor did the plaintiff offer any evidence to support her claim.[11] (*Ibid*.) Further, the court observed, "there clearly is a material distinction between a manual laborer denied *rest and* meal periods and a deputy probation officer denied a meal period." (*Ibid*.) Thus, neither *Curcini* nor *Dimon* considered the statewide interest in a living wage addressed by the state minimum wage law.

Finally, any doubt in this area "'must be resolved in favor of the legislative authority of the state.'" (*City of Vista, supra*, 54 Cal.4th at p. 582; accord, *California Fed. Savings, supra*, 54 Cal.3d at p. 24 ["we defer to legislative estimates regarding the significance of a given problem and the responsive measures that should be taken toward its resolution"].) Considered in light of the Legislature's goal of ensuring workers earn a sufficient wage to

---

[11] *Dimon* was decided four years before the Supreme Court in *City of Vista* clarified the analysis under the home rule doctrine is a legal, not a factual determination. (*City of Vista, supra*, 54 Cal.4th at p. 558.)

provide the necessities of life and raise them above the poverty level, we conclude the minimum wage law addresses a statewide concern "that 'justif[ies]' the state's interference in what would otherwise be a merely local affair." (*City of Vista*, at p. 560; accord, *California Fed. Savings*, at p. 18.)

> d. The minimum wage is appropriately tailored to address the statewide concern in the health and welfare of workers

Under the fourth and final inquiry, we "determine whether the law is 'reasonably related to . . . resolution' of [the statewide] concern [citation] and 'narrowly tailored' to avoid unnecessary interference in local governance [citation]." (*City of Vista, supra*, 54 Cal.4th at p. 556; accord, *California Fed. Savings, supra*, 54 Cal.3d at pp. 17, 24.) "[T]he state law must be reasonably related to the issue at hand and limit the incursion into a city's municipal interest." (*Lippman v. City of Oakland, supra*, 19 Cal.App.5th at p. 765; *California Fed. Savings*, at p. 25 ["'the sweep of the state's protective measures may be no broader than its interest"].)

Here, the statewide concern in worker health and welfare is reasonably related to the imposition of a minimum wage. As discussed above, the minimum wage law does not deprive the City completely of its authority to determine wages. Rather, the law sets a floor based on the Legislature's judgment as to the minimum income necessary for a living wage within this state. The City retains authority to provide wages for its employees above that minimum as it sees fit. The minimum wage requirement therefore intrudes less on local authority than the prevailing wage laws, mandatory binding arbitration requirements, and prohibitions on cost-of-living pay increases held

32

invalid by the Supreme Court.  (See *City of Vista, supra*, 54 Cal.4th at p. 564; *County of Riverside, supra*, 30 Cal.4th at p. 282; *Sonoma County, supra*, 23 Cal.3d at p. 302.)  As such, the balance struck is "'sensible and appropriate fashion as between local and state legislative bodies.'"  (*California Fed. Savings*, *supra*, 54 Cal.3d at p. 17.)  This "limited interference . . . is substantially coextensive with the state's underlying regulatory interest."  (*Id.* at p. 25.)

The City contends the minimum wage requirement is not tailored to the state's interest because it does not exclude charter cities from its ambit.  But this merely restates the City's argument that the state interest in the minimum wage should not prevail over the City's local interest in setting its own employees' wages.  Further, the statewide concern that workers earn a living wage implicates the wages of the City's employees, who, like other employees in the state, must provide sustenance for themselves and their families.  The City has not offered any alternative regulation that would address this statewide concern without applying the minimum wage to its employees.

4.      *Application of the minimum wage requirement does not unconstitutionally impair the MOU between plaintiffs and the City*

The City contends in the alternative that enforcement of the state minimum wage against it would unconstitutionally impair the negotiated MOU between the City and plaintiffs.  This argument lacks merit.  Both the United States and California Constitutions prohibit laws impairing the obligation of contracts under certain circumstances.  (See U.S. Const., art. I, § 10, cl. 1 ["No State shall . . . pass any . . . Law impairing the obligation of Contracts . . . ."]; Cal. Const., art. I, § 9 ["A . . . law impairing the

obligation of contracts may not be passed."].) "It has long been settled, however, that the contract clause does not absolutely bar all impairments." (*Chorn v. Workers' Comp. Appeals Bd.* (2016) 245 Cal.App.4th 1370, 1392; accord, *Deputy Sheriffs' Assn. of San Diego County v. County of San Diego* (2015) 233 Cal.App.4th 573, 578-581 [contract clause did not bar Public Employees' Pension Reform Act of 2013 from subjecting new members of union to less favorable benefit formula].) "As is particularly relevant here, the contract clause protects only vested contractual rights." (*Chorn,* at pp. 1392-1393 [statute prospectively restricting payment of lien awards to assignees did not unconstitutionally impair existing contractual obligations].)

The City's claim fails because it has identified no valid contract existing at the time of the legislative action at issue. When the relevant MOU was enacted by resolution of the City Council in September 2015, the statute setting the minimum wage at $10.00 per hour effective January 1, 2016 had already been enacted by the Legislature two years earlier. (See Stats. 2013, ch. 351 [Assem. Bill No. 10 filed with the Secretary of State on Sept. 25, 2013].) In short, the legislation could not impair the contract because at the time of the legislation's enactment the contract had not yet been entered into by the parties.

The City relies solely on *Sonoma County*, which invalidated a state law that "declared *null and void* any provision of 'a contract, agreement, or [MOU] between a local public agency and an employee organization or an individual employee which provides for a cost of living wage or salary increase' in excess of the increase provided for state employees." (*Sonoma County, supra,* 23 Cal.3d at pp. 305, 314.) *Sonoma County* is distinguishable—the law there expressly retroactively voided the specified contract provision. Here, the law has no retroactive application, and

34

instead sets a schedule for minimum wage increases in the future. (See Stats. 2013, ch. 351, § 1 [increasing minimum wage to $9.00 on July 1, 2014 and $10.00 on January 1, 2016].)

We recognize the MOU between plaintiffs and the City is a binding contract. Nonetheless, as plaintiffs contend, they are entitled to be paid at or above the minimum wage regardless of any agreement to work for less, because their right to the minimum wage cannot be waived by contract. Under California law, "employees may not agree to waive their entitlement to the minimum wage [citations], nor may a collective bargaining agreement waive that right." (*Flowers, supra*, 243 Cal.App.4th at p. 82 [concluding Los Angeles County Metropolitan Transportation Authority must comply with minimum wage law notwithstanding operative collective bargaining agreement]; accord, § 1194 ["Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action . . . ."]; *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 455 ["By its terms, the rights to the legal minimum wage . . . conferred by [the statute] are unwaivable."], disapproved on another ground in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360; *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1208 [rights accorded by § 1194 "may not be subject to negotiation or waiver"].) Thus, any agreement by plaintiffs to work for less than the minimum wage does not relieve the City of its duty to pay plaintiffs at or above the minimum wage.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate the order sustaining the City's demurrer and to enter an order overruling the demurrer.  Appellants are to recover their costs on appeal.


FEUER, J.

WE CONCUR:


PERLUSS, P. J.


SEGAL, J.