Filed 7/2/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARLOS GUTIERREZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BRAND ENERGY SERVICES OF CALIFORNIA, INC.,<br><br>    Defendant and Respondent. | A154604<br><br>(Alameda County<br>Super. Ct. No. RG17846239)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on June 16, 2020, be modified as follows:  On page 2, the first sentence of the first paragraph of the factual and procedural background section, "Plaintiff was a journeyman scaffold worker at gasoline refineries owned and operated by Brand between 2010 and November 2015," is changed to "Plaintiff was a journeyman scaffold worker employed by Brand between 2010 and November 2015."

There is no change in the judgment.

Respondent's petition for rehearing is denied.

Dated:     July 2, 2020                FUJISAKI, J.     , Acting P. J.

1

A154604/Gutierrez v. Brand Energy Services of California, Inc.

Trial Court:  Superior Court of the County of Alameda

Trial Judge:  Robert McGuiness, J.

Counsel:  Keller Grover, Eric A. Grover, Robert W. Spencer; Law
Offices of Scot D. Bernstein and Scot D. Bernstein;
Legal Aid of Marin and Ellyn L. Moscowitz for
Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Ronald W.
Novotny and Brian M. Wheeler for Defendant and
Respondent.

Filed 6/16/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARLOS GUTIERREZ,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BRAND ENERGY SERVICES OF CALIFORNIA, INC.,<br><br>        Defendant and Respondent. | A154604<br><br>(Alameda County<br>Super. Ct. No. RG17846239) |

This is an appeal from final judgment entered against plaintiff Carlos Gutierrez after the trial court granted the motion for summary judgment filed by defendant Brand Energy Services of California, Inc. (Brand). Plaintiff, a former Brand employee, sued Brand for nonpayment of his pre-shift employer-mandated travel time in violation of several Labor Code and Business and Professions Code provisions. Plaintiff brought this lawsuit on his own behalf and on behalf of a proposed class of similarly situated persons.

In granting summary judgment for Brand prior to class certification, the trial court found a complete defense existed with respect to each of plaintiff's causes of action under California Industrial Welfare Commission Wage Order No. 16-2001, section 5(D) (Cal. Code Regs., tit. 8, § 11160(5)(D)). According to the trial court, this provision permitted union-represented employees and their employers to enter into collective bargaining agreements (CBA's) that waived the right to all compensation for employer-mandated travel time. The trial court further found that the applicable CBA's in this

1

case, as amended by a June 2017 letter of understanding (LOU), confirmed a bargained-for practice wherein Brand compensated its employees for post-shift mandatory travel time but not pre-shift mandatory travel time. The trial court thus entered judgment for Brand.

On appeal, plaintiff contends the trial court's order was based on an erroneous interpretation of the applicable wage order. For reasons that follow, we agree with plaintiff and therefore reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was a journeyman scaffold worker at gasoline refineries owned and operated by Brand between 2010 and November 2015. Brand contracted for the erection and dismantling of scaffolding at various Northern California refineries, including the Chevron refinery in Richmond, the ConocoPhillips refinery in Rodeo, the Tesoro refinery in Martinez, and the Valero refinery in Benicia. This scaffolding was used by Brand employees to perform maintenance and construction work. During his employment with Brand, plaintiff performed this work at the Tesoro refinery, the ConocoPhillips refinery and, lastly, the Chevron refinery, where he spent the final five years of his employment.

Brand was a signatory to the CBA's at issue in this case with the Carpenters 46 Northern California Counties Conference Board. These CBA's applied to several building and construction trade associations, which included plaintiff's union, Carpenters Local Union 152 (hereinafter, Carpenters Union). The terms of plaintiff's employment were governed by these CBA's.

According to plaintiff's deposition testimony, for the last three months of his employment with Brand, plaintiff generally worked 10- or 12-hour

2

shifts that began at 5:30 p.m.  Plaintiff would arrive at the Chevron refinery 30 or 40 minutes before the start of his shift and, after parking his vehicle in the refinery lot at about 4:45 p.m., would walk three to five minutes to the refinery gate.  At this electronic gate, plaintiff "badge[d] in" with his employee access card.  Once through the gate, plaintiff was required to walk to a shuttle bus stop, where he would then wait with other workers about five to seven minutes for the shuttle bus to arrive.  Plaintiff would then ride this shuttle bus five to 10 minutes to the lunch tent, where he would put on mandatory safety gear before attending a mandatory safety meeting.

Brand deemed the official start of plaintiff's shift to be the scheduled start time of this daily mandatory safety meeting.  According to plaintiff, he was required to take the Brand shuttle bus to this meeting site instead of driving his own vehicle or being dropped off by a friend or relative.

After working his 10- or 12-hour shift, plaintiff would reboard the bus to return to the refinery gate between 2:45 and 3:15 a.m., where he would badge out no later than 3:30 a.m.

Under a practice referred to by Brand as " 'in on the employee's time, out on the Company's,' " scaffold workers including plaintiff were not paid for the time they spent each work day before their shift:  (1) badging in at the electronic gate, (2) walking to the shuttle bus stop and waiting for the bus, (3) traveling by bus to the mandatory safety meeting site, and (4) donning mandatory safety gear before the start of this meeting (hereinafter, collectively referred to as employer-mandated travel time).  Plaintiff alleged that Brand's failure to pay any wages, including minimum wage, for this employer-mandated travel time, which amounted to about 30 to 40 minutes each work day, violated Labor Code provisions requiring timely payment of due wages and accurate wage statements (Lab. Code, §§ 201–203, 226, 1194,

1194.2), and constituted an unfair business practice under the Business and Professions Code (Bus. & Prof. Code, § 17200 et seq.).

Accordingly, plaintiff sought by his first amended complaint, which is the operative complaint, statutory penalties, recovery of unpaid wages, restitution and restoration of sums owed and property unlawfully withheld, interest and attorney fees and costs. Plaintiff brought these claims on his own behalf and on behalf of a proposed plaintiff class of all hourly nonexempt on-site workers employed by Brand at sites within the State of California during the four-year period preceding the original filing date of the complaint to the present.

On March 29, 2017, Brand filed a first amended answer to the first amended complaint in which it asserted as its 10th affirmative defense that each of plaintiff's claims was barred by the exemption set forth in Industrial Welfare Commission (IWC) Wage Order No. 16-2001, section 5(D) (Cal. Code Regs., tit. 8, § 11160) (hereinafter, Wage Order 16, § [__]).[1]

On November 2, 2017, Brand moved for summary judgment based on its 10th affirmative defense, asserting there were no triable issues of material fact because a complete defense existed as to each of plaintiff's causes of action under Wage Order 16 section (5)(D). In making this assertion, Brand relied on a recent LOU entered into by Brand and the Carpenters Union on June 23, 2017, after it filed its first amended answer, that was intended to amend the CBA's governing plaintiff's employment with respect to the practice of " 'in on the employee's time, out on the Company's.' " Specifically, this LOU provided in relevant part:

---

[1] The IWC and its authority to enact wage orders such as Wage Order 16 are discussed *post* at pages 6–8.

4

"Pursuant to this practice, the employees' time spent traveling from the refinery gates to their first places of work within the refineries is considered to be non-compensable commuting time within the refineries. The employees are then required to be compensated at their applicable hourly rate(s) for the time spent traveling from their last place(s) of work back to the refinery gate(s) at the end of the work day. By its payment of such compensation, an Employer is deemed to have satisfied its obligation to pay its employees for the time spent traveling between the refinery gate(s) and their work sites on any given day.

"This letter is intended to constitute a collectively bargained agreement between an employer and a labor organization with respect to employer-mandated travel time within the meaning of California Industrial Welfare Commission Wage Order 16, Section 5(D)."

Following a contested hearing, the trial court granted Brand's motion for summary judgment by order dated May 21, 2018, and thereafter entered judgment for Brand. Plaintiff timely appealed.

## DISCUSSION

The standard of review of an order granting summary judgment in the defendant's favor is well settled. We "independently assess the correctness of the trial court's ruling by applying the same legal standard as the trial court in determining whether any triable issues of material fact exist, and whether the defendant is entitled to judgment as a matter of law." (*Rubin v. United Air Lines, Inc.* (2002) 96 Cal.App.4th 364, 372.)

Here, the relevant facts are undisputed and the correctness of the trial court's summary judgment ruling hinges on purely legal issues: (1) whether California law permits an employer and its union-represented employees to execute a CBA that expressly waives the right to be paid minimum wage for

5

otherwise compensable pre-shift employer-mandated travel time; and (2) if so, whether the CBA between Brand and the Carpenters Union in this case, as amended by the June 2017 LOU, expressly provided for the waiver of this right by plaintiff and other covered employees.

## I.    Wage and Hour Claims:  Legal Framework.

In California, "wage and hour claims are . . . governed by two complementary and occasionally overlapping sources of authority:  the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).)

The IWC has " 'broad statutory authority' " to issue industry- and occupation-wide wage orders specifying minimum requirements with respect to wages, hours, and working conditions.  (*Brinker*, *supra*, 53 Cal.4th at p. 1026.)  Applicable here, Wage Order 16, enacted in 2001, governs employers and employees in the construction industry.  (Cal. Code Regs., tit. 8, § 11160.)

"The IWC's wage orders are to be accorded the same dignity as statutes.  They are 'presumptively valid' legislative regulations of the employment relationship [citation], regulations that must be given 'independent effect' separate and apart from any statutory enactments [citation]." (*Brinker*, *supra*, 53 Cal.4th at p. 1027.)  "Wage orders take precedence over the common law to the extent they conflict."  (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 839 (*Troester*).)  However, "because the Legislature is the source of the IWC's authority, *a provision of the Labor Code will prevail over a wage order if there is a conflict.*"  (*Gerard v. Orange Coast Memorial Medical Center* (2018) 6 Cal.5th 443, 448, italics added.)

This appeal raises issues concerning the proper interpretation of provisions of both Labor Code section 1194 and Wage Order 16.  Ordinary

principles of statutory interpretation apply. (See *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 43 (*Gonzalez*) [wage orders are construed in accordance with the principles of statutory interpretation].) Accordingly, our task is to independently construe the statutory and regulatory language in the context of the entire legal framework, striving to discern the statute's or wage order's underlying purpose and to harmonize its different components. (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1183; *Gonzalez*, *supra*, at p. 44 [appellate court reviews the meaning of a wage order de novo].)

The underlying purpose of this particular legal framework is well established: " 'When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. [Citations.] Time and again, we have characterized that purpose as the *protection of employees*—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. [Citations.] In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees. [Citations.]' [Citation.]" (*Troester*, *supra*, 5 Cal.5th at p. 839; see *Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038, 1045 [" 'Wage and hour laws "are to be construed so as to promote employee protection." [Citations.] These principles apply equally to the construction of wage orders' "].)

With these principles in mind, we begin our statutory construction with the relevant text. " 'If it "is clear and unambiguous our inquiry ends." [Citation.]' " (*Frlekin v. Apple Inc.*, *supra*, 8 Cal.5th at p. 1046.) If, on the other hand, "the language can be interpreted to have more than one reasonable meaning, a court may consider ' "a variety of extrinsic aids,

7

including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.]' [Citation.]" (*Flowers v. Los Angeles County Metropolitan Transportation Authority* (2015) 243 Cal.App.4th 66, 73 (*Flowers*).) "Judicial construction that renders any part of the wage order meaningless or inoperative should be avoided." (*Gonzalez, supra*, 215 Cal.App.4th at p. 44.)

### A. The Right to Minimum Wage.

"The Labor Code . . . contemplates that employees will be paid for all work performed." (*Troester, supra*, 5 Cal.5th at p. 840.) Employees' right to minimum wage is provided for in Labor Code section 1194, which states in relevant part: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." (Lab. Code, § 1194, subd. (a).)

Consistent with this Labor Code provision, section 4 of Wage Order 16 requires "[e]very employer" to pay a specified minimum wage to its employees "per hour for all hours worked . . . ." (Wage Order 16, § 4.) Section 4 applies "to all persons employed in the on-site occupations of construction . . . ." (*Id.*, § 1.) There are specific exemptions from this minimum wage requirement that are not relevant here. For example, there are exemptions for certain categories of employees, including "persons employed in administrative, executive, or professional capacities" (*id.*, § 1(A)) and "outside salespersons" (*id.*, § 1(C)).

8

" 'Hours worked' " for purposes of Wage Order 16, including section 4, means "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (Wage Order 16, § 2(J).)

## B. The Right to Compensation for Employer-mandated Travel.

Addressing the same definition of "hours worked" that applies in this case (see Wage Order 16, § 2(J)), the California Supreme Court has held that "[employees'] compulsory travel time, which includes the time they spent waiting for [their employer's] buses to begin transporting them, was compensable" because, during this time, the employees remained under their employer's "control . . . ." (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 587, 588 (*Morillion*).)

Consistent with this holding, Wage Order 16 section 5(A) provides: "All employer-mandated travel that occurs after the first location where the employee's presence is required by the employer shall be compensated at the employee's regular rate of pay or, if applicable, the premium rate that may be required by the provisions of Labor Code § 510 and Section 3, Hours and Days of Work, above."

Wage Order 16 section 5(D), in turn, provides: "This section shall apply to any employees covered by a valid collective bargaining agreement unless the collective bargaining agreement expressly provides otherwise."

As the trial court noted in its summary judgment order, the IWC's " 'Statement as to the Basis for Wage Order 16,' " section 5, dated October 23, 2000, refers to *Morillion* when describing section 5's requirement that employers compensate employees for all employer-mandated travel time at

9

the regular or premium rate of pay, but lacks any citation or other indication of the IWC's intention behind Wage Order 16 section 5(D)'s exemption.[2]

With this legal context, we begin our analysis.

II.       **Statutory Construction.**

          **A. Plain Language.**

The parties agree this appeal turns on the meaning of Wage Order 16 section 5(D).  Plaintiff contends there is no language in section 5(D) permitting employers and employees to enter into a CBA that waives employees' right to minimum wage for employer-mandated travel time. Rather, plaintiff contends that section 5(D) has nothing to do with the minimum wage requirements of section 4(B).  Section 5(D) authorizes an employer and its union-represented employees to enter into a CBA that "expressly provides" for the waiver of the employees' rights under section 5, including the right under subdivision (A) to be compensated at the "regular rate of pay or, if applicable," the premium rate.  However, an employee's right to be compensated at least the minimum wage for every hour worked, which arises from section 4(B), remains in force.

Brand, on the contrary, contends section 5(D) permits union-represented employees and their employers to opt out of paying *any compensation* for travel time that would otherwise be compensable under *Morillion* and section 5(A).  According to Brand, the plain language of section 5(D) supports its position that "employees whose employment is governed by a construction industry CBA is not required to be paid for travel time at *any* rate, because the 'section' [5(A)] requiring compensation for such time 'does

          [2] The parties agree the legislative history of Wage Order 16 section 5 sheds no light on whether the IWC or the Legislature intended to require employers with a section 5(D)-compliant CBA to pay employees minimum wage for employer-mandated travel time.

10

not apply' if a CBA expressly so provides." Further, with respect to the two types of rates mentioned in section 5(A), the regular rate and the premium rate, Brand argues they "have nothing to do with the purpose or effect of the CBA exemption in Section 5(D) . . . ."

We conclude plaintiff's position, which accounts for all of section 5's language, is better reasoned. First, we accept plaintiff's point that Wage Order 16 section 5 does not state that union-represented employees and employers can opt out of paying any compensation whatsoever for employer-mandated travel time. Rather, section 5(A) identifies two particular rates of pay, the employee's regular rate and, if applicable, the premium rate. Section 5(D) then provides: "This section"—meaning section 5, including section 5(A)'s two pay rates—applies to any employees covered by a valid CBA "unless the [CBA] expressly provides otherwise." (Wage Order 16, § 5(D).) "This section"—again, meaning section 5—does not mention, much less override, the separate requirement under section 4(B) that employees receive compensation "not less than the applicable minimum wage for all hours worked . . . ." (*Id.*, § 4(B).) As the California Supreme Court has warned, substituting other words for the express language contained in a statute or regulation "amounts to improper judicial legislation." (*Morillion*, *supra*, 22 Cal.4th at p. 585.) Moreover, "[j]udicial construction that renders any part of the wage order meaningless or inoperative should be avoided." (*Gonzalez*, *supra*, 215 Cal.App.4th at p. 44.)

Applying these rules here, we conclude Brand's interpretation of section 5(D) is unsupported by section 5's plain language, which limits its own scope to section 5 and says nothing about waiving the right to minimum wage. Brand's interpretation also directly conflicts with the express terms of Wage Order 16 sections 1 and 4. These sections, subject to exceptions not

11

applicable here, expressly apply to "all persons employed in the on-site occupations of construction" (Wage Order 16, § 1) and require payment of "not less than the applicable minimum wage for all hours worked in the payroll period" (*id.*, § 4(B)).[3]

## B. Harmonizing California Labor Laws.

In reading the text of Wage Order 16 section 5(D) in this manner, we acknowledge its ambiguities. As such, we resort to other indicia of the IWC's intent, making sure to heed the California Supreme Court's instruction that "courts must seek to harmonize IWC wage orders with statutes to the extent possible [citation]." (*Stoetzl v. Department of Human Resources* (2019) 7 Cal.5th 718, 725 (*Stoetzl*).) And, as mentioned, where a wage order conflicts with a Labor Code statute, the statute "will prevail . . . ." (*Gerard v. Orange Coast Memorial Medical Center*, *supra*, 6 Cal.5th at p. 448.)

Applying these rules, we find another fundamental problem with Brand's position. Were we to accept Brand's argument that Wage Order 16 section 5(D) permits CBA-covered parties to "opt out" of compensating employees for employer-mandated travel time notwithstanding Wage Order section 4, we would also undermine Labor Code section 1194, subdivision (a), the statute bestowing on California employees the right to minimum wage subject to exceptions not relevant here.

---

[3] During oral argument, Brand argued that Wage Order 16 section 5(B) further demonstrates the ICW's intent to permit parties to a valid CBA to choose to make employer-mandated travel time noncompensable. This provision does not mention, much less purport to govern, employer-mandated travel time. Rather, it applies to the quite different circumstance when "an employee is required to report to the work site and does report, *but is not put to work or is furnished less than half of his/her usual or scheduled day's work . . . .*" (Wage Order 16, § 5(B), italics added.)

Numerous California courts have interpreted Labor Code section 1194, subdivision (a) to preclude employers from contracting with its employees for a rate of pay less than minimum wage.  As our appellate colleagues in the Second Appellate District recently explained:  "[P]laintiffs . . . are entitled to be paid at or above the minimum wage regardless of any agreement to work for less, because their right to the minimum wage cannot be waived by contract.  Under California law, 'employees may not agree to waive their entitlement to the minimum wage [citations], nor may a collective bargaining agreement waive that right.' (*Flowers*, *supra*, 243 Cal.App.4th at p. 82 [concluding Los Angeles County Metropolitan Transportation Authority must comply with minimum wage law notwithstanding operative collective bargaining agreement]; accord, [Lab. Code,] § 1194 ['Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action . . . .']; *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 455 [citations] ['By its terms, the rights to the legal minimum wage . . . conferred by the statute are unwaivable.'], disapproved on another ground in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360 [citations]; *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1208 [citation] [rights accorded by § 1194 'may not be subject to negotiation or waiver'].)  Thus, any agreement by plaintiffs to work for less than the minimum wage does not relieve the [defendant] of its duty to pay plaintiffs at or above the minimum wage." (*Marquez v. City of Long Beach* (2019) 32 Cal.App.5th 552, 577–578; see *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324 [holding that, based on "a strong public policy in favor of full payment of wages for all hours

13

worked," the "minimum wage standard applies to each hour worked by [the employees] for which they were not paid"].)[4]

Rather than address this case law, Brand directs us to cases recognizing that union-represented workers may bargain away their rights to

[4] Recently, the California Supreme Court considered the distinct issue of whether a certified class of state correctional employees could enter into "memoranda of understanding" or "MOUs" with the State waiving compensation for time spent on pre- and postwork activities that included traveling from the prison's outermost gate to their work post within the prison. (*Stoetzl*, *supra*, 7 Cal.5th at pp. 722, 730–731.) Upholding this waiver of compensation, the court reasoned: "[T]he MOUs [containing specific provisions for compensating pre- and postwork activities] were all approved by the Legislature, with this approval signed by the Governor and chaptered into law." (*Id.* at p. 740.) Accordingly, the MOUs became "legislative enactments" that superseded the more general state laws, including the state minimum wage laws that were the basis for the plaintiffs' claims. (*Ibid.*)

In so holding, the *Stoetzl* court distinguished cases like ours involving private labor agreements *not* signed into law: "This is not a case in which a party to a labor agreement agreed to waive state law protections that are not subject to waiver. (Cf. *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 455 [citations] ['By its terms, the rights to the legal minimum wage and legal overtime compensation conferred by the statute are unwaivable.']; *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1208 [citation] ['[T]he rights accorded by [Labor Code] section[] . . . 1194 . . . may not be subject to negotiation or waiver.']; *Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 335 [citation] ['[F]ull payment of accrued wages is an important state policy, enacted for protection of employees generally. As such, it is not to be avoided by the terms of a private agreement.'].) Rather, [*Stoetzl*] is a case in which a party to a labor agreement agreed, subject to legislative approval, to certain specified terms of employment, *and the Legislature then enacted a special law approving the agreed-upon terms.*" (*Stoetzl*, *supra*, 7 Cal.5th at pp. 740–741.)

*Stoetzl* is therefore inapposite. There is no dispute the CBA's and LOU in this case were not approved by the Legislature much less chaptered into law.

14

overtime pay and meal periods.[5]  (See *Vranish v. Exxon Mobil Corp.* (2014) 223 Cal.App.4th 103, 111; *Araquistain v. Pacific Gas & Electric Co.* (2014) 229 Cal.App.4th 227, 238.)  These cases are inapposite because, in each, the reviewing court relied on an express statutory exemption for CBA-covered employees relating to the particular right at issue.  For example, in *Vranish*, the reviewing court upheld a CBA exemption from the overtime pay requirements in Labor Code section 510 based on language in Labor Code section 514 providing:  " 'Section[] 510 . . . do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.' "  (*Vranish*, at p. 109; see Wage Order 16, § 3(H) [same].)  Similarly, in *Araquistain* the reviewing court relied on Labor Code section 512, subdivision (e)(2), which provides "an *exception* to the ordinary rule that an employer must provide meal periods of a specified time after a specified amount of work; that is, it provides that where a collective bargaining agreement meets certain requirements, subdivision (a) 'do[es] not apply.' "  (*Araquistain*, at p. 236.)

There is no equivalent statutory language in our case.  As discussed, Wage Order 16 section 5(D) contains no express exemption from the

---

[5] Brand does cite federal authority, *Burnside v. Kiewit Pacific Corp.* (9th Cir. 2007) 491 F.3d 1053, 1064, for the proposition that a CBA may waive the right to be paid minimum wage for mandatory travel time. However, as the trial court noted, *Burnside* did not confront the question of whether a CBA may exempt any employer from paying any compensation (including minimum wage) for travel time.  Nor did *Burnside* address or even mention the California case law holding that the right to minimum wage under Labor Code section 1194 is not waivable.

minimum wage requirements in Labor Code section 1194, subdivision (a) and Wage Order 16 section 4 for the employer-mandated travel time of CBA-covered employees. Nor has Brand presented a valid basis for inferring such an exemption based on the legal scheme as a whole. (See, e.g., *Plastic Pipe & Fittings Assn. v. California Building Standards Com.* (2004) 124 Cal.App.4th 1390, 1413 [absent an express statutory exemption, court cannot infer exemption from statutory requirements unless it discerns a clear legislative intent to provide an exemption]; *Flowers*, *supra*, 243 Cal.App.4th at p. 80 [same]). Indeed, as Brand recognizes the IWC has time and again demonstrated that it understands how to draft CBA exemptions from specific Labor Code requirements, including Labor Code section 1194's minimum wage requirement, but it has not done so here. (E.g., Wage Order 16, §§ 3(H)(1) [CBA exemption from overtime pay requirements: "Subsections A, B, C, D, and E of Section 3, Hours and Days of Work, shall not apply to any employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than thirty (30) percent more than the state minimum wage. (See Labor Code § 514)"], 3(H)(2) [CBA exemption from make-up time requirements], 11(E) [CBA exemption from rest break rules].)

Brand relies on the IWC's silence with respect to whether Wage Order 16 section 5(D) was intended to override Labor Code section 1194, subdivision (a) and Wage Order 16 section 4 as proof that employers with section 5(D)-compliant CBA's *need not* pay minimum wage for employees' mandatory travel time. The trial court reached the same conclusion in its summary judgment order: "This would have been a significant issue and if

16

the IWC and the legislature had that intent [to require payment of minimum wage] then the court would expect the intent to be visible. (*In re Christian S.* (1994) 7 Cal.4th 768, 782 ['We are not persuaded the Legislature would have silently, or at best obscurely, decided so important and controversial a public policy matter']; [citation].)"

This reasoning, we conclude, begs a fundamental question: Would the IWC have acted to override our Legislature's statutory grant of the right to at least minimum wage for all hours worked with the bare language in Wage Order 16 section 5(D) that "[t]his section"—meaning only section 5—"shall apply to any employees covered by a valid [CBA] unless the [CBA] expressly provides otherwise"? We decline to assume the IWC intended to override this important state right in the absence of actual evidence.

The law is clear that " ' " '[w]hatever may be thought of the wisdom, expediency, or policy of the act' " ' [citation], we have no power to rewrite the statute to make it conform to a presumed intention that is not expressed." (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 446.) Moreover, because " '[r]eview of the [IWC]'s wage orders is properly circumscribed,' " the " ' " 'reviewing court does not superimpose its own policy judgment upon a quasi-legislative agency in the absence of an arbitrary decision . . . ." ' [Citation]." (*Morillion, supra*, 22 Cal.4th at p. 587.) Accordingly, we decline to rewrite Wage Order 16 section 5(D) to conform to the intention presumed by Brand and the trial court, and yet nowhere expressed—to wit, that the IWC intended to authorize employers with compliant CBA's to opt out of compensating their employees for employer-mandated travel time.[6]

---

[6] We need not decide for purposes of this appeal whether the IWC has the authority to enact a wage order provision authorizing an employer and its employees to enter into a CBA that waives the right to minimum wage for employer-mandated travel time notwithstanding Labor Code section 1194,

17

## C.     Public Policy Considerations.

Lastly, when deciding how best to interpret Wage Order 16 section 5(D), we are careful to uphold our duty to "harmonize and reconcile [potentially conflicting statutory provisions] so as to carry out the overriding legislative purpose of the statutory scheme as a whole." (*Flowers*, *supra*, 243 Cal.App.4th at p. 82.)  As we stated at the start:  "State wage and hour laws 'reflect the strong public policy favoring protection of workers' general welfare and "society's interest in a stable job market."  [Citations.]'  [Citations.]" (*Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1297.)  For this reason, " 'the statutory provisions are to be liberally construed with an eye to promoting such protection.'  [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at pp. 1026–1027; see also, *Flowers*, at p. 82.)  Our interpretation of Wage Order 16 section 5(D) as providing an exemption for compliant CBA's from the requirement to pay employees their regular or premium rate of pay for employer-mandated travel time, but not the requirement to pay at least minimum wage, comports with these principles.

Brand would have us focus on a different public policy—protecting the right of union-represented employees and their employers to execute and enforce CBA's covering their wages, hours, and working conditions. According to Brand, "the principal reason for the Section 5(D) exemption" is the fact that "union-represented employees working under a CBA are afforded superior pay and working conditions" as compared to other employees.  Describing their particular CBA as "overly generous," Brand suggests its employees have little need for minimum wage protection.

subdivision (a).  We simply hold that Wage Order 16 section 5(D), as currently drafted, does not afford this right to an employer and its employees.

While enforcing valid CBA's and encouraging labor relations are no doubt important public policies, they do not trump in this instance the significant public policy underlying these particular statutes and wage orders, which is protecting the economic and social welfare of employees. California Supreme Court authority makes this amply clear. (*Morillion*, *supra*, 22 Cal.4th at p. 594; see *Frlekin v. Apple Inc.*, *supra*, 8 Cal.5th at pp. 1045, 1056–1057 [based on a liberal construction of Wage Order 7 (Cal. Code Regs., tit. 8, § 11070), which requires employers to pay their employees a minimum wage for all " 'hours worked,' " the court held that the plaintiffs " 'must be paid' " for the time required for defendant's mandatory end-of-shift exit searches].)

The same is true for Brand's and the trial court's concerns about the practicability and workability of requiring "an employer with a [Section 5(D)] compliant CBA to separately track and then differentiate between regular 'hours worked' and employer-mandated travel 'hours worked,' paying the regular rate for the former and minimum wage for the latter." In *Troester*, the California Supreme Court rejected a similar argument by the employer that it should not be required to pay employees for "de minimis" amounts of work due to " 'the practical administrative difficulty of recording small amounts of time for payroll purposes.' " (*Troester*, *supra*, 5 Cal.5th at p. 848.) In rejecting this argument, the court pointed to "the wage order's remedial purpose requiring a liberal construction, its directive to compensate employees for all time worked, the evident priority it accorded that mandate notwithstanding customary employment arrangements, and its concern with small amounts of time . . . ." (*Id.* at p. 847.)

We reach the same conclusion here. In light of Wage Order 16's and the Labor Code's remedial purposes requiring liberal construction and their

directives to compensate employees at a rate no less than minimum wage for all hours worked notwithstanding any agreement or customary arrangement to the contrary (Lab. Code, §§ 1194, 219; Wage Order 16, §§ 1, 4), we conclude section 5(D) provides no authority for employers and employees to waive all compensation for employer-mandated travel time.  We therefore reverse the judgment against plaintiff and in favor of Brand and remand this matter to the trial court for further proceedings consistent with this opinion.

In light of this conclusion, we need not consider plaintiff's alternative argument that the CBA in this case, as amended by the post-lawsuit LOU, failed to meet Wage Order 16 section 5(D)'s exemption requirements.

## DISPOSITION

The judgment in favor of Brand is reversed.  The matter is remanded to the trial court for further consideration in light of this opinion.

_____
Jackson, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.

A154604/*Gutierrez v. Brand Energy Services of California, Inc.*

21

A154604/Gutierrez v. Brand Energy Services of California, Inc.

Trial Court:        Superior Court of the County of Alameda

Trial Judge:       Robert McGuiness, J.

Counsel:           Keller Grover, Eric A. Grover, Robert W. Spencer; Law
Offices of Scot D. Bernstein and Scot D. Bernstein;
Legal Aid of Marin and Ellyn L. Moscowitz for
Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Ronald W.
Novotny and Brian M. Wheeler for Defendant and
Respondent.